# Miller *versus* Clement.

*Rights of Sheriff's Vendee and Tenant of former Owner, to Way-going Crop.*

At an administrator's sale in 1847, A. bought a farm, which, after two-thirds of the purchase-money had been paid, was sold on a judgment against him, entered to October Term 1854, and a deed acknowledged to the purchaser, July 4th 1857, whose vendee B. at once entered into possession, and cut and carried away a crop of grain then growing on the land. In an action of trespass *quare fregit* against him by C., who had sowed the grain and claimed possession of the land, as assignee of one who held a lease from A. executed

[Miller *v.* Clement.]

March 28th 1852, for one year, with the express right of "seeding in the fall and carrying away the crop," it was *Held*,

· 1. That, under the circumstances, C. must be regarded as a tenant having the right to the way-going crop, and B. as the sheriff's vendee of the title under which the tenancy arose; and that as the sheriff's sale did not divest the tenant's title to the way-going crop, C. was entitled to it, and to recover its value from B.

2. That a notice given by C., at the sale, that he claimed the grain in the ground because "it had been put in" by him, and because he had bought it at a tax sale, did not estop him from claiming it, under the lease, nor did it mislead the purchaser of the land; for as a tenant, he was not required to give any notice to save the crop, and the notice which he gave not only asserted the lease indirectly, but a tax sale and purchase, which was sufficient to put the purchaser upon inquiry.

ERROR to the Common Pleas of *Fayette county*.

This was an action of trespass, *quare clausum fregit*, brought by Samuel M. Clement against Jacob B. Miller, to recover damages for cutting and carrying away a crop of wheat and rye.

The material facts of the case appear to be as follows:—

On the 16th of December 1847, Jacob B. Miller, the defendant, as administrator of Zadok Springer, deceased, in pursuance of an order of the Orphans' Court, sold the land on which the alleged trespass was committed to James Piper, for $1980.85.

By the terms of the sale, one-third of the purchase-money was to be paid in cash, and the residue in one and two years, with interest. Piper paid one-third, and went into possession. He also alleged that he had paid the balance, which was controverted by Miller, who claimed that a certain judgment, entered to October Term 1854, No. 179, against said Piper, and in favour of Rachel Skiles (who was the sole creditor of Zadok Springer), was taken by him from Piper, in her name, for a balance due on the second payment, and that the third instalment remained wholly unpaid.

On the 1st of April 1854, Piper executed a mortgage on this property to the American Life and Health Insurance Company of Philadelphia, to secure the payment of $1500.

On the 26th of March 1856, he leased the property to John Blocher for "one year from the first of April next ensuing, with the privilege of seeding down in the fall, and taking and cutting down the grain so sown, and carrying it off."

On the 15th of July 1856, Blocher transferred his lease to Clement the plaintiff, who went into possession, and put in a crop of grain in the fall of 1856.

On the 2d of June 1857, judgment was obtained against Piper on the mortgage above mentioned, and on the 4th of June 1857 the property was sold by the sheriff to Rachel Skiles, under her judgment, to whom a deed was acknowledged July 1st 1857.

At this sale Clement gave written notice that he claimed the

[*Miller v. Clement.*]

grain in the ground, 1st, because "it was put in by him," and, 2dly, because "it was bought by him in April 1857, at a sale made by the supervisors of North Union township for taxes against James Piper."

On the 2d of July 1857, Clement the tenant cut a small portion of the grain, but did not remove it. On the 4th of July 1857, Mrs. Skiles conveyed her title to Miller, the defendant, who immediately commenced cutting the grain, which he afterwards removed, and which was the trespass complained of in this suit.

On the trial the defendant offered to give in evidence a notice which he had published at the sale, informing "purchasers and bidders" that "the legal estate to the land" about to be sold as the property of James Piper, was in Miller as administrator or trustee of Zadok Springer, and that the only interest which Piper had therein was an equitable title to receive a deed upon his paying the purchase-money due thereon; that there was a balance of purchase-money due from Piper, with interest up to date, of $1710, and that the judgment upon which the property was about to be sold was for part of said purchase-money. The plaintiff objected to this evidence, and the court sustained the objection and rejected the evidence.

It was proved on the trial by Piper that he had paid the first and second instalments in full, and had executed and delivered to Miller a judgment-bond for the balance in the name of Rachel Skiles, and by Mrs. Skiles that the estate of Zadok Springer was indebted to her; that she never lent any money to Piper; that she knew nothing of the judgment-note which Miller had taken for her from Piper; never saw it, and when told of it she refused to take it in satisfaction of what Springer's estate owed her. That Miller was not her attorney in this case; that she gave him a receipt against the estate of Springer for the amount of the Piper judgment; that the property *was* sold to her by the sheriff, but that she did not buy it; that the deed was made in her name without authority, that she assigned it to Miller, and he again to her.

The defendant requested the court to charge the jury,—

1. That the plaintiff is estopped by his notice at the sheriff's sale from setting up any claim to the grains in dispute under the agreement between Piper and Blocher; that his ground of claim that the grains "were put in by me" is insufficient, as any notice of the *lease*, as it is called, and of a right to the fall or way-going crop, and is as to that simply a nullity; and therefore as said lease was not put on record, and no notice given of it, the defendant (or Mrs. Skiles) must be presumed to have bought at sheriff's sale upon the supposition that Clement had no other

[Miller v. Clement.]

claim to the grain than that under the road tax title, of which he has given no evidence.

2. That as it appears that not only the second payment, for which the judgment to Mrs. Skiles was given, but also the third payment, due in 1849, was due and unpaid by Piper to J. B. Miller, administrator of Zadok Springer, Mr. Miller, the defendant, had a right, in July 1857, to enter upon and take possession of the land sold, and thereupon to take the grain growing, which by such re-entry became his, by virtue of his original title in trust for the estate of his intestate; and that by such re-entry his rights overreached and excluded any supposed rights under the agreement between Piper and Blocher, or Clement his assignee.

3. That if the jury find that Piper did not actually *pay* the balance of the second payment, but that the judgment for $448.69, of February 15th 1849, Skiles v. Piper, was given for said balance of the second payment of purchase-money due J. B. Miller, administrator of Z. Springer, then the sheriff's sale of the land to Rachel Skiles, in June 1857, conveyed the whole title to the land, and gave to the sheriff's vendee of the land, or her assigns, the right to take the grain in dispute.

The court below (GILMORE, P. J.) answered all the above points in the negative. There was a verdict and judgment in favour of plaintiff for $277.89. Whereupon the defendant sued out this writ, and assigned for error the rejection of the evidence as to his notice at the sale above mentioned, and the refusal of the court below to instruct the jury as above requested.

*James Veech*, for plaintiff in error.—1. There is no proof that either Miller or Mrs. Skiles had any knowledge of the lease to Blocher at the time of the sheriff's sale. But Clement knew it, and it was his duty to disclose it when he undertook to give notice of the "ways" in which he claimed the growing crops. His notice of a road-tax sale of his own grain for Piper's tax was found, upon scrutiny, to be wholly fictitious, but behind it was the concealed fact that the grains were his as assignee of Piper's lessee. Admit that he had a kind of possession of the grain-fields, it was not such a possession as to require from bidders a closer reconnoissance of his right to the grains beyond the title he specifically asserted—the road-tax title. This bidders could ascertain was a nullity, and under the notice given, they were not bound to make further inquiry. He led them to that, and that only.

True, he specifies as one of the "two ways" in which he claimed the grains, that "the same was put in by me." So could any ploughman or sower say. But in the face of this faint if not feigned assertion of right, follows the other assertion, that

" in April last (1857), the same was- bought in by me at a sale thereof by the supervisors for taxes against James Piper." Would any sane man infer aught else from all this than that Clement, as Piper's servant or employee, had ploughed and sown the fields in the fall of 1856, and then, in April 1857, he had bought the crop as Piper's at a sale for road tax ?

We say that by this Clement was *estopped* against claiming under the lease.   See Picard *v.* Sears, 6 Ad. & Ellis 475, quoted by Mr. Justice Woodward in Waters' Appeal, 11 Casey 526, for the whole doctrine of estoppel *in pais:* Moncure *v.* Hanson, 3 Harris 396.

2. Supposing it competent for Clement to take refuge in the lease, by it he had express notice of how Piper held the land. Had he pursued the inquiry to which this pointed him, he would have learned from the records that Piper had no title, had long been in default in his payments, and was subject at any time to be dispossessed.

Mr. Miller was a trustee for the creditors and heirs of his intestate.   And when the interest in the land which Piper had acquired became vested in him by the sheriff's deed, and its assignment to him, he was thereby remitted to his original rights and duties, to take the land and its usufructs for the benefit of his *cestui que trusts.*

The agreement with Blocher, called a lease, was not one in fact.   It was a *sale* by Piper, for a consideration paid of an estate in the land.   There was no *rent* reserved.   It had none of the lineaments of a lease.   In no possible way could the sheriff's vendee get any rent—she had no remedy but actual manucaption of that which she and Miller, her assignee, were led by Clement to believe belonged to Piper, and which, by all the cases, passed with the land by the sale : Bittinger *v.* Baker, 5 Casey 66–69.

3. This point was but asking the court to affirm the doctrine of Horbach *v.* Riley, 7 Barr 81, Vierheller's Appeal, 12 Harris 107, and other cases, with this addition, that because of the re-union of titles, and the restoration of Miller to his original title, effected by the sheriff's deed—Piper, the lessor or grantor to Blocher, having had no legal title—the vendee's right to the grains was necessarily inseparable from his right to the land.

Had the court below allowed the jury to pass upon the question whether the judgment of Skiles *v.* Piper was for purchase-money, they might—we say certainly *would*—have found that it was.   Then, as no title had been made to Piper, Miller, by virtue of his administration and trusteeship, and his sheriff's title, would be entitled, upon the well-known principle of McCall *v.* Lenox, 9 S. & R. 304, to eject any intermediately created lessee, and take the land with its products.   From the moment the sheriff's

[Miller *v.* Clement.]

deed was acknowledged, neither Piper nor his lessee had a right to hold the land an hour.

4. The judgment having been taken in the name of the creditor of the intestate, whom Mr. Miller represented, it was proper that Miller should advertise bidders of the true nature of that judgment.

If the 2d and 3d points had any pertinency to the case, then there was manifest error in excluding this notice.

The court declined hearing *D. Kaine* for defendant in error.

The opinion of the court was delivered, November 25th, 1861, by

LOWRIE, C. J.—It is impossible for us to regard the plaintiff below otherwise than as a tenant, having a right to a waygoing crop, and the defendant as the sheriff's vendee of the title under which the tenancy arose, and thus the case comes exactly within the decision in *Bittinger v. Baker*, 5 Casey 66, which declares that the sheriff's sale does not divest the tenant's title to the way-going crop then growing: 1 Wright 134.

This leaves nothing for our consideration but the notice given by the tenant at the sheriff's sale. Did it mislead the purchaser? We think not. No notice was needed to save the tenant's crop. The purchaser was bound to know it was there, and to respect it. The notice that the plaintiff put it in did not disavow, but rather asserted his tenancy, or his late tenancy, already presumed to be known to the defendant, the purchaser. And the further notice that the plaintiff had bought the crop on a sale of it for road taxes was not misleading; for if growing crops may be sold for taxes, those even of a tenant may be sold for the taxes on the land occupied by him, and any one may buy them in and get a good title. Such a notice does not at all divert the attention of a purchaser, from the fact that there is a crop in the ground that may belong to a tenant or his vendee. We perceive no error in the case.

Judgment affirmed.