Stephenson v. Elliott.

Filed Sept. 15, 1891.

---

No. 116.

STEPHENSON v. ELLIOTT.

LANDLORD AND TENANT.—*Right of Incoming Tenant.—Entry to Sow Wheat. —Custom.—Evidence.*—An incoming tenant, for the purpose of establishing the lawful character of his possession, may show that it is the custom of the neighborhood that the incoming tenant shall enter upon the premises before the expiration of the existing tenancy for the purpose of sowing wheat.

SAME.—*Silence of Outgoing Tenant.—Possession.*—If the outgoing tenant is silent and interposes no objection when the incoming tenant enters to sow wheat, the jury has the right to infer his consent to such entry, and the outgoing tenant is estopped to deny the lawfulness of the incoming tenant's possession.

ANIMALS.—*Trespass.—Maintenance of Partition Fence.*—Adjoining proprietors of land are equally bound to maintain a partition fence. Where neither does so, the common law rule that the owner of domestic animals is bound to confine them upon his own land prevails.

From the Hancock Circuit Court.

*J. A. New, S. E. Urmston, D. S. Gooding* and *M. B. Gooding,* for appellant.

*L. H. Reynolds,* for appellee.

REINHARD, J.—One Jerry James was a tenant on the

farm in controversy, in Hancock county, Indiana, for the year beginning March 1st, 1888. In August, 1888, Stephenson, the appellee, leased the farm from the owner for the year beginning March 1st, 1889, at the same time obtaining permission from the owner, provided that it was satisfactory to James, the tenant in possession, to go upon the farm in the fall of 1888, prepare a portion of the ground, and sow wheat upon the same.

In September, 1888, while James was in possession under his tenancy, Stephenson, without first obtaining the consent of James, entered upon the land, plowed up and prepared a portion of the land upon which a crop of oats had just been harvested, and sowed it in wheat. James, the tenant in possession, though he repeatedly saw Stephenson at work preparing the ground and sowing wheat, made no objection thereto, and on one occasion even gave him directions how to get in the field without laying down the fence.

The farm, consisting of about fifty acres of land, was enclosed by a fence, which was the only fence upon the place. The land was divided by a creek running from north to south, leaving about thirty acres on the west, and about twenty acres on the east side. In August, 1888, James had about fifteen acres of corn on the east side, and about five acres on the west side. None of the remainder was then in cultivation, though a portion, as we have seen, had been sowed in oats.

In December, 1888, after James had gathered his corn, he rented the fifteen-acre stalk-field, on the east side of the creek, to Mat. Elliott, the appellee, and turned his own stock, three horses and two cows, upon the five acres on the west side. The animals left the stalk-field, and got into the appellant's growing wheat, and damaged it, there being no fence either around the wheat-field to protect it, or around the stalk-field to confine the animals.

This action was brought by Stephenson, the appellant, against Elliott, the appellee, for the damage alleged to have

been done to the wheat by the latter's stock. The case was tried by a jury, who, under the instructions of the court, returned a verdict for the defendant (appellee).

At the proper time the appellant offered to prove by a witness " that it is the custom of that neighborhood in regard to the letting of .land, accepted by landlords and tenants generally, that the incoming tenant shall enter upon the premises, sow wheat before the expiration of the tenancy of the outgoing tenant, which wheat, under such circumstances, shall be cut and harvested after the expiration of the tenancy of the outgoing tenant."

The proposed evidence was, upon objection of the appellee, excluded by the court, and an exception was taken to the ruling by the appellant. Was this ruling erroneous?

A modern writer, upon the subject of Landlord and Tenant, makes use of the following language :

" The incoming tenant has also the privilege of entering before the expiration of the existing tenancy, for the purpose of plowing and preparing for his crops. These privileges of partial occupation are sometimes expressly given by the terms of the lease ; and, where that is not the case, frequently may be supported by the custom of the country. The proof of any such custom lies upon the party who claims under it. If the terms of the lease or agreement are inconsistent with the custom, it will exclude it. But so far as such terms are not utterly inconsistent with the custom, the latter will prevail." Wood Landlord and Tenant, section 557. See, also, Taylor Landlord and Tenant, section 542; Woodfall Landlord and Tenant, 726 ; Smith Landlord and Tenant, 256.

We think, for the purpose of establishing the lawful character of his possession, the appellant had a right to prove the custom of the country with reference to his right of entry for the purpose of sowing wheat. It is true he had already proved the tacit consent of the outgoing tenant to his entry, but this did not debar him from the right of making additional proof, and thus making his case as strong as he could

make it; and this was especially true inasmuch as the appellee was disputing the appellant's right of possession by denying that the silence of the outgoing tenant implied any consent whatever to the use of the wheat ground. In our view the court erred in excluding this testimony.

We think from the silence of the outgoing tenant, when the appellant entered to sow wheat, the jury had a right to infer his consent to such entry, and if this is so the appellee is estopped to deny the lawfulness of the appellant's possession. If that possession was lawful, however, then the appellant had as much right to the protection of his wheat as if he had leased the grounds from the outgoing tenant himself. We think, for the time being, these parties occupied and sustained to each other the relation of adjoining proprietors without a partition fence.

Adjoining proprietors of land are equally bound to maintain a partition fence. Where neither does so, the common law rule that the owner of domestic animals is bound to confine them upon his own land prevails. *Myers* v. *Dodd*, 9 Ind. 290; *Pittsburgh, etc., R. W. Co.* v. *Stuart*, 71 Ind. 500.

The question of the liability of the appellee upon the facts set out is reserved upon the instructions given by the court and those asked for by appellant and refused. We think, so far as the ruling upon the instructions was in conflict with the views expressed in this opinion, it was erroneous.

The motion for a new trial should have been sustained.

The judgment is therefore reversed, with instructions to the lower court to grant a new trial, and for further proceedings in harmony with this opinion.

Filed Sept. 15, 1891.