## BOURN v. DOWDELL et al.

### S. F. No. 525; October 7, 1897.

#### 50 Pac. 695.

**Pleading.**—An Admission in Plaintiff's Answer that pledged property was sold after a certain date cures a cross-complaint defective in not so stating.

**Guaranty.**—A Contract Provided "That B. Should have the Privilege at any time hereafter of selling the wine belonging to or hypothecated by D., at a price not less than thirteen cents per gallon." A subsequent clause provided that "the wine may be sold by B. at any price after March 1, 1893, provided B. guarantees a profit to D. of $4,000." Held, that B. might sell before said date at not less than thirteen cents per gallon, and after said date at any price, upon guaranty of $4,000 profit to D.

**Contracts—Second Superseding First.**—Defendants, Being Indebted to plaintiff, executed their note to him for the amount, and pledged 520,000 gallons of wine to secure payment. A contract between the parties, made two days later, contained provisions inconsistent with the prior agreement. It provided for a division of profits of defendants' business between the parties, on a basis different from that contained in the first agreement. The wine was by it again delivered to plaintiff; and it fixed the conditions on which the wine might be sold by plaintiff, and the time of sale, and the price to be received, and entered into details of past, present and future dealings, and the manner in which they were to be carried out. Held, that the second agreement superseded the first.

**Guaranty.**—Where Wine was Pledged With Power in the Pledgee to sell upon guaranty to the pledgors of a profit for them of $4,000, the guaranty was supported by a sufficient consideration.

**Guaranty.**—The Guaranty was Absolute, and not upon condition that the pledgee should be fully paid.

**Guaranty.**—Breach of the Guaranty was not a Mere Offset pro tanto to a note secured by the pledge, but was a complete defense.

APPEAL from Superior Court, Napa County; E. D. Ham, Judge.

Action by William B. Bourn against James Dowdell and Arthur B. C. Dowdell. From a judgment for defendants and an order denying a new trial plaintiff appeals. Affirmed.

Page & Eells for appellant; F. E. Johnson and Rodgers & Paterson for respondents.

GAROUTTE, J.—This action was brought on a promissory note calling for the payment of $36,000. Prior payments had been made thereon; but the amount of these payments is not material. Defendants, by way of cross-complaint, set out certain agreements, claiming thereby full satisfaction of the note, and also a judgment against plaintiff in the sum of $4,000. The views of the trial court coincided with defendants' claims, and, as a result, judgment went against plaintiff for that amount. An appeal is prosecuted from the judgment and order denying the motion for a new trial. The questions involved in this case are purely matters of fact, and largely dependent upon the construction to be given three certain agreements entered into in writing by plaintiff and defendants. The findings of fact made by the trial court have support in the evidence, and will be taken as true in the consideration of the questions here presented.

Defendants were lessees of plaintiff's wine cellar, and, upon a settlement between the parties, it was found that they owed plaintiff for cash advances, rental, etc., $36,077. At this time, November 26, 1892, defendants gave plaintiff their promissory note for that amount and such note is the one here sued upon. Contemporaneous with the execution of the note, a collateral agreement was entered into by the parties, whereby defendants pledged 520,000 gallons of wine, then in defendants' cellar, to secure the payment of the aforesaid note. Previous to this time, to wit, September 21, 1892, these same parties had entered into another written agreement appertaining to the advances to be made by plaintiff, and the purchase of grapes and the manufacture of wine and brandy by defendants. This agreement, among other things, provided that, in addition to a certain rate of interest to be paid by defendants upon advances made, plaintiff was to have the option of an additional two per cent per annum, or one-third of the net profits of the venture. This agreement further declared in detail how these profits were to be determined. Upon November 28th, two days after the making of the second agreement and the promissory note, defendants desiring still further advances, to be used in carrying on the business of the manufacture of wine and brandy, the parties entered into a third agreement in writing. By this agreement plaintiff promised to make additional advances to defendants, not to exceed $35,000; and, among other matters, we find the follow-

ing recitals and covenants set forth in that agreement:
"Whereas, certain contracts and agreements were heretofore
made and entered into between the same parties, said contracts
and agreements bearing date September 20, 1892, and September 21, 1892; and whereas, under said contracts, the sum of
$36,077.08 was determined and found due W. B. Bourn on
the 21st of November, 1892, exclusive of his share of profits;
and whereas, said sum was paid Bourn by Dowdell and Son
by a certain promissory note dated November 21, 1892, payable on or before March 21, 1893, and secured by about 520,-
000 gallons of wine; and whereas, Dowdell and Son are desirous of obtaining additional sums of money from Bourn to be
used in the viticultural operations, as expressed in the agreement dated September 21, 1892: Now, therefore, in consideration of the covenants herein contained, it is mutually
agreed that any and all profits that may arise or accrue from
the viticultural operations of Dowdell and Son shall be divided
as follows: $4,000 is hereby determined as Dowdell and Son's
share before said Bourn shall be entitled to any profit. After
Dowdell and Son have received or derived profits to said
amount of $4,000, Bourn shall have and receive as his share
of the profits all sums up to but not exceeding the sum of
$6,500. . . . . All profits shall be estimated as determined
and expressed in the agreement dated September 21, 1892.
. . . . It is mutually agreed that W. B. Bourn shall have the
privilege at any time hereafter of selling all the wine belonging to or hypothecated by Dowdell and Son, at a price not
less than thirteen cents per gallon, at St. Helena; . . . .
but, before he shall make any sales, he shall notify Dowdell
and Son in writing of his intention to do so. . . . . For the
security of all moneys owing or that may become owing to
Bourn, or for future advances, Dowdell and Son have executed and delivered the notes herein mentioned; and, as security for all the sums due or to become due by virtue of
this or any agreement, Dowdell and Son hereby deliver to W.
B. Bourn all wines made at Graystone during the vintage of
1892, being about 520,000. . . . . It is mutually agreed that
the wine and brandy may be sold by Bourn at any price after
March 1, 1893, provided Bourn guarantees a profit to Dowden and Son of $4,000; and, if the wine and brandy is not
sold, all agreements in reference to settlement will be made

as per the terms of the original agreement, dated September 21, 1892."

The trial court found as a fact that Bourn sold the wine after March 1, 1893, and thereupon held defendants entitled to the $4,000 provided for by the guaranty of Bourn. The point is now made that the cross-complaint has no allegation that this wine was sold after March 1, 1893, and also no allegation that it was sold at a price less than thirteen cents per gallon, and that such allegations were necessary to the statement of a cause of action. But, by an allegation in the answer to the cross-complaint, we find an admission of plaintiff that he sold the wine after March 1, 1893; and this admission is equivalent to an allegation in the cross-complaint to that effect, and the objection therefore is without force. Neither do we think there is strength in the remaining position taken. As we construe the two clauses of the agreement bearing upon the sale of the wine by Bourn, the second is a limitation upon the first; that is to say, Bourn was authorized to sell the wine before March 1, 1893, at a price not less than thirteen cents per gallon, and was also authorized to sell the wine after March 1, 1893, at any price, guaranteeing to defendants a profit of $4,000.

Probably the most important question presented at the trial related to the respective times when the second and third agreements were made and executed. It was claimed by appellant that these two agreements were made at the same time, and were part of one and the same transaction. This claim was controverted by respondents, and the court found against appellant's contention. The finding of fact bearing upon this question will not be disturbed by us. As to the respective dates when these two agreements were made, the matter is immaterial. The all-important question was and is, Should these two agreements be considered and coupled together as one single agreement? A variance between the dates set forth in the pleadings and the dates found by the court as to the respective times when they were made amounts to nothing. A period of time intervening between the making of these two agreements was the controlling question, and this intervening period was just as controlling when laid at one time as at another.

The third agreement between these parties is not well drawn, and is of most obscure meaning. At the same time,

it is quite apparent that it was intended by its terms to supersede the second agreement made. Many of its provisions indicate such intention. Many of its provisions are absolutely inconsistent with the terms of the agreement made at the time the $36,000 note was delivered. Indeed, the third agreement appears to have been intended to cover all the transactions of the parties. It provides for a division of the profits of the viticultural operations of defendants. This provision clearly takes the place of a provision found in the first agreement bearing upon the matter of profits. The 520,000 gallons of wine with which the second agreement dealt is again delivered to Bourn as security for all sums then owing or to become owing. The agreement fixes a price at which this wine may be sold. It fixes certain times and conditions bearing upon the sale; and it enters into minute details as to the business transactions—past, present and future—between these parties, and the manner in which they are to be carried out to final termination. The trial court's construction of this contract we deem the correct one.

It is claimed: (1) That the guaranty of profits to defendants is unsupported by a consideration; (2) that the guaranty is upon the implied condition that all plaintiff's advances shall be repaid; (3) that, in any event, the guaranty is not a complete defense to the note sued on, but only an offset pro tanto. We deem it unnecessary to address ourselves to a further consideration of the meaning of this contract. It is sufficient to say that these contentions of appellant are untenable. The contract bears no such construction. For the foregoing reasons the judgment and order are affirmed.

We concur: Harrison, J.; Van Fleet, J.