Hon. JNO. L. McATEE,
Hon. BAYARD T. HAINER,
Hon. BENJ. F. BURWELL, } Associate Justices.
Hon. CLINTON F. IRWIN,

---

### BENJAMIN L. KIRTLEY v. MAY DYKES.

(Filed Feb. 8, 1900.)

1. EJECTMENT—*Judgment.* A notice of the final decision of the land office is not an absolutely necessary condition precedent to the bringing of an action by the successful party to recover the possession of real estate.

2. GROWING CROPS—*Belong to Whom.* Where there has been a recovery of the possession of lands held adversely the successful plaintiff is entitled to the growing crops, as against the evicted defendant who planted them, on a final decision of ouster, unless such growing crops have matured and been separated from the realty.

(Syllabus by the Court.)

*Error from the District Court of Noble County; before Bayard T. Hainer, District Judge.*

*Dale & Bierer* for plaintiff in error.

*S. H. Harris* for defendant in error.

## STATEMENT OF THE CASE.

This is an action in injunction begun by May Dykes, plaintiff, against Benjamin L. Kirtley, defendant, in the district court of Noble county, for the purpose of obtaining possession of a part of a homestead. It appears from the record that prior to the time of beginning of the action the parties had been contesting for the tract of land; that a decision had been rendered in the land department adversely to defendant, Kirtley, and that plaintiff filed her petition for the purpose of dispossessing Kirtley from the land; that the contest between the parties was originally for prior settlement, and that pending the determination of such contest, Kirtley filed an additional contest on the ground of abandonment. At the hearing for the temporary injunction, the judge of the district court on the 6th day of July, 1898, made an order dividing possession of the tract of land equally between the parties to the action; that the possession of the land remained in that condition until the final hearing of the case, which took place on the 12th day of December, 1898, at which last named date the court made an order, which, in substance, gave to Dykes the possession of all the quarter section of land in dispute, giving to the defendant, Kirtley, thirty days to take his movable improvements from the land, and further ordered that whereas, said Benjamin L. Kirtley has forty-five acres of wheat planted and growing upon said land, that the plaintiff shall pay to said defendant $2.50 per acre for the said wheat within thirty days, or if she does not do so, then the defendant, Kirtley, shall have the right of possession of said forty-five acres of land, which is so planted and growing in wheat, until after harvest in the season of 1899, and that the said Benjamin

—2

L. Kirtley shall deliver in the half bushel on said land, one-third of said wheat to the plaintiff, May Dykes, from which judgment, the defendant, Kirtley, appeals and brings this case here for review.

Opinion of the court by

IRWIN, J.: A reversal is urged upon two propositions, namely: first, that the injunction suit was pematurely brought for the reason that Kirtley, the defendant, never received from the land department any notice of the fact that his motion for review had been finally disposed of; second, that the court had no jurisdiction in this character of a case to determine the usable value of the forty-five acres which Kirtley had planted to wheat, neither had the court any jurisdiction to require Kirtley, in case Dykes failed to pay $2.50 per acre for the wheat land, to deliver to her one-third of the wheat in the half bushel.

We think the first contention is untenable, for the reason that a notice of the final decision of the land department as to the disposition of defendant Kirtley's motion for review was not a necessary condition precedent to plaintiff bringing this suit, when the matter was, as a matter of fact, finally decided by the land department, and a judgment rendered in favor of the plaintiff. Her right to the possession of the premises in question was completed, and her action to recover possession thereof should not be delayed to wait the service of notice on the defendant by the department, she having no control over the action of the department in giving or refusing to give notice of such determination of plaintiff's motion for review. Her right to the possession of the property in question depended entirely upon the decision of the land department, and not upon notice of said decision to the defendant.

As to the defendant's right to notice of a decision of his case by the land department, it is a question between the defendant and the land department, and one which in our judgment in no way affects the right of the plaintiff to possession of the land in controversy, and plaintiff could not legally be kept out of possession simply because the land department had neglected or failed to give notice to the defendant.

The main fact to be considered is: Has the question in controversy between the parties to this suit, as to the title and right of possession to the land in question, been legally and fully determined by the proper tribunal? If so, and the decision is in favor of the plaintiff, then she is entitled to take such legal proceedings as are necessary to recover possession of the premises in question, independent of the fact whether notice has or has not been given by the land department to the defendant in this action.

As to the second assignment of error, to-wit: that the judgment of the trial court was wrong as to the orders made in regard to the crops growing upon the premises in controversy, we think this proposition has been settled by this court in the case of *Phillips v. Keysaw et al.,* reported in 7 Okla. 674, where the court say:

"Where there has been a recovery of the possession of the land held adversely, the successful plaintiff is entitled to the growing crops, as against the evicted defendant, who planted them; but until such possession has been terminated by ouster, the party so adversely holding is the owner, and entitled to the crops produced by his annual labor and cultivation, which were harvested before such ouster."

This was a case brought by plaintiff against defendant for a mandatory injunction for possession of land and

a prohibitory injunction, restraining the removal of crops therefrom. Appeal was taken from an order dissolving the temporary injunction as to the removal of the crops, and such order dissolving the injunction was assigned by plaintiff as error. In that case Henry H. Keysaw settled upon the southwest quarter of section fourteen, township twenty-seven north, range one east, I. M., and claimed the same as a homestead under the homestead laws of September 21, 1893, and filed his homestead entry in the land office. Plaintiff in error, Phillips, afterwards contested his entry for prior settlement. Upon hearing, the local land office decided in favor of Keysaw. Upon appeal to the commissioner of the general land office, this decision was affirmed, but upon appeal to the secretary of the interior, the decisions of the commissioner and of the local land office were overruled, and the land awarded to Phillips. Pending the contest Phillips had the possession of the north ninety acres of the land, and Keysaw had the possession of the south seventy acres. The final decision of the secretary of the interior in this case was filed March 25, 1898. In the fall of 1897, a tenant of Keysaw put in sixty-five acres of wheat upon the seventy acres which Keysaw had possession of. On June 20, 1898, the cutting of wheat was commenced. This suit was begun on June 16, by issuing the summons, but no application for a temporary injunction was presented or order of injunction issued until June 27, 1898, at which time the wheat in controversy had all been cut, and was in the shock on the premises where grown. On said day the court made a temporary order enjoining the defendant from in any manner interfering with the exclusive possession of the plaintiff to the seventy acres of land in controversy, ex-

cept three acres thereof, for a period of fifteen days from the date of the order, and from in any way interfering with the exclusive possession of the plaintiff to the whole of the seventy acres, after the expiration of the said fifteen days, until the final hearing of the case should be had. The court also found that the tenant of Keysaw was entitled to the possession of two-thirds of the wheat then in shock on said land, and enjoined Keysaw from selling or disposing of the other one-third of said wheat until the trial of the case upon its merits in the court.

In this case the court said:

"The simple question involved in this case is, who was the owner of the wheat in question when the temporary order of injunction was granted? The fact that the defendant Keysaw was, at the time of the issuing of the injunction, liable to Phillips, or might thereafter become liable, for the *mesne* profits of the land withheld by him from the possession of Phillips, during the pendency of the contest proceedings, or for any other debt, would not give jurisdiction to the court or judge by injunction to prevent him from selling or disposing of the same, unless Phillips was the owner of said wheat, or had some legal property interest therein.

"The injunctional powers of a court of chancery, concededly broad, and by respectable authority, claimed to be sufficiently latitudinous to authorize its writ to be substituted for the ordinary writ of ejectment, or an order for restitution in forcible entry and detainer, has not yet received judicial sanction as a substitute for the writ of replevin, or to accomplish the purpose of a writ of attachment; and therefore, if the wheat in question was not the property of Phillips, or if he had no legal property interest therein, although Keysaw may have been insolvent, and had no other property out of which a judgment for *mesne* profits could have been made, a court of equity had no jurisdiction by injunction to attach, or in any manner seques-

ter the same, in order that it might be applied to the satisfaction of any judgment at law for *mesne* profits thereafter to be obtained. Was Phillips, then, the owner, or did he have a legal property interest in the wheat in question, which justified the invoking of the injunctional powers of the court for its protection

"The common law relating to the ownership of growing crops is in force in this territory, unmodified by statute, except in one particular, which is not involved in this case. At the common law, growing crops produced by annual labor and cultivation which are called *"fructus industriales,"* for some purposes form a part of the real estate to which they are attached; and unless there has been a severance of them from the land, actual or constructive, they follow the title thereto. For other purposes they are regarded as personalty. In the case of voluntary conveyances of the land, where the growing crop is owned by the grantor, they pass by the conveyance of the land, unless specially reserved by the grantor, whether the instrument of conveyance evidences an absolute sale, a mortgage, or a lease of the land. Where the land is sold under foreclosure, or under execution, the purchaser of the land acquires title to the crops; and when there is a recovery of possession of land held adversely, the successful plaintiff is entitled to the growing crops as against the evicted defendant who planted them."

Now, applying the doctrine of this cause, which bears many strong features of resemblance to the case at bar, what should have been the judgment in the lower court in this case, as to the wheat growing upon the land? So far as we have been able to ascertain, the courts have universally held that growing crops, at least before maturity, were a part of the realty, and passed by a conveyance thereof.

This court has held to the doctrine that before crops grown upon realty could be regarded as personal property, it must not only have matured, but have been actually sev-

ered from the realty. In this case the wheat was actually growing upon the land in question at the time of the entering of the final order herein, and it therefore seems clear to us, was a part of the real estate; and when, by the decision of the land department, the title to the real estate and the right of possession thereof was decreed to the plaintiff herein, it conveyed and carried with it the right to the growing crop, to-wit: the wheat in question, and the same became by virtue of said devision, the absolute property of the plaintiff. The reasons for such a contention are apparent. While the wheat depended to some extent upon the manual labor expended by the defendant in preparing the land, furnishing the seed, and sowing the same, its subsequent growth and development, as well as its maturity, depended upon the strength and virtue of the soil of the plaintiff, and the strength of the plaintiff's land became incorporated in and a part of said crop, and by the decision of the land office the right to the soil was immediately vested in the plaintiff, and the defendant had no right to take or appropriate any of the strength or virtue of the soil, without the consent of the plaintiff.

As the wheat in question at the time of rendering the final decision in this case by the court below was not matured, nor was it severed from the real estate, we think it passed to the plaintiff with the title, and became her absolute property, and in this holding we think there is no hardship that the defendant can complain of, because we take it that a contest on the ground of abandonment gives the contestant no right of possession, except to preserve his improvements, and the land in question being in controversy in the land office under such a contest, the defendant was charged with notice at the time of sowing of the wheat in question, that such contest might be de-

cided against him, and with this knowledge he saw fit to take the chances, on sowing the wheat, and thereby took the risk of losing the same, and all work and labor expended thereon in case said contest should be decided against him, which contingency happened, and he is chargeable with all the results and consequences that flow therefrom. If the decision has worked a hardship against him in this particular, he must remember that it is but the natural result which he had reason to expect might follow at the time that he sowed the wheat in question; and hence, as the wheat in question, in our judgment, became the property of the plaintiff by the decision of the land office, that part of the decision of the court below which provided that the plaintiff, Dykes, should pay to the defendant, Kirtley, $2.50 per acre for the said wheat within thirty days, or in the event she does not do so, defendant Kirtley, should have the right of possession to the said forty-five acres of land so planted in wheat, until after the harvest season of 1899, and that the said Benjamin L. Kirtley should deliver in the half bushel on said land one-third of said wheat to the plaintiff, was erroneous, and should be modified to this extent.

It is therefore ordered that this case be remanded to the district court of Noble county, to be corrected in this particular, and that this part of the decision be held for naught, and that the decision of the district court of Noble county, in all other respects be affirmed. All costs to be taxed according to this opinion.

Hainer, J., having presided in the court below, not sitting; all of the other Justices concurring.