HARTSHORNE v. INGELS.

No. 5, Okla. T.    Opinion Filed May 12, 1909.

(101 Pac. 1045.)

CROPS—Ownership—Matured Crops.  Where there has been a recovery of the possession of land held adversely, the successful plaintiff is entitled to a matured crop of corn standing unsevered on such land at the time of the final judgment of ouster and delivery of possession of the premises to plaintiff under a writ of restitution.

(Syllabus by the Court.)

*Error from Probate Court, Kay County; R. L. Howsley, Judge.*

Action by H. A. Ingels against T. M. Hartshorne.  Judgment for plaintiff.  Defendant brings error.  Reversed and remanded.

This is an action of replevin wherein H. A. Ingels, defendant in error, plaintiff below, seeks to recover from T. M. Hartshorne, plaintiff in error, defendant below, the possession of 1,000 bushels of corn, grown and produced by plaintiff on the northeast quarter of section 8, township 26 north, range 2 east, Indian Meredian, Kay county, during the year 1906.  The case was tried to the court without a jury upon an agreed statement of facts.  For some time prior to the 21st day of June, 1905, a contest had been pending before the Secretary of the Interior between defendant, T. N. Hartshorne, and one F. A. McKee, to determine who had the right to take as a homestead the land upon which the corn was grown.  Pending the contest McKee occupied that portion of the quarter section upon which the corn was grown.  The contest having been decided by the Secretary of the Interior in favor of Hartshorne, he instituted forcible entry and detainer action in one of the justice courts of Kay county to recover possession of that portion of the quarter section theretofore occupied by McKee.  Judgment was rendered in the district court of Kay county on appeal on June 21, 1905, in favor of Hartshorne.  Appeal

from this judgment was taken to the Supreme Court of the territory, where it was dismissed. Certificate of such dismissal was filed in the district court of Kay county on October 4, 1906, and on October 19, 1906, a writ of restitution was served, whereby Hartshorne was placed in possession of the premises whereon the corn in controversy was then standing, fully matured, but ungathered. Plaintiff Ingels was not a party to the forcible entry and detainer action, but he had occupied and cultivated during the year 1906 as tenant of McKee the land upon which the corn was grown. He had no contract with Hartshorne in reference to the land cultivated by him or the corn growh thereon. It is agreed that the corn was seasonably planted and cultivated by plaintiff as the tenant of McKee during the year 1906, and that, at the time of the dismissal of the appeal in the Supreme Court in the forcible entry and detainer action, said corn crop was standing in the field fully and completely matured, unharvested, and unsevered from the soil, and that it was standing in that condition when the writ of restitution was served on the 19th day of October, 1906. The judgment of the district court was in favor of plaintiff for the possession of the corn. From this judgment a proceeding in error was taken by defendant to the Supreme Court of the territory, where it was pending at the time of the admission of the state, and it is now before this court under the provisions of the Enabling Act (Act Cong. June 16, 1906, 34 Stat. 267, c. 3335) for final disposition.

L. A. Maris, for plaintiff in error, cited: 8 Am. & Eng. Enc. of Law (2nd Ed.) 306; 12 Cyc. 977-8; Freeman v. McLennan, 26 Kan. 151; Tripp v. Hasceig, 20 Mich. 254; McGinnis v. Fernandes, 135 Ill. 69; Phillips v. Keysaw, 56 Pac. 695 (Okla.); Kittridge v. Wood, 3 N. H. 503.

Moss, Lowe & Turner, for defendant in error.

HAYES, J. (after stating the facts as above). It is conceded correctly we think by counsel for plaintiff that plaintiff's rights are identical with the rights of his landlord, McKee. McKee occupied the land prior to the time he was ousted therefrom by the

writ of restitution under a claim that he had' a right to homestead the same. He was therefore holding the land adversely to Hartshorne, the plaintiff in the ejectment suit and defendant in this action. *Phillips v. Keysaw et al.*, 7 Okla. 674, 56 Pac. 695. The question, therefore, presented by this appeal is whether the crops cultivated and grown and fully matured are personal property as between the successful plaintiff in an action of ejectment and the evicted defendant who held the premises in adverse possession.

Plaintiff relies principally upon *Hecht v. Dettman*, 56 Iowa, 679, 7 N. W. 495, 10 N. W. 241, 41 Am. Rep. 131, and *First Nat. Bank v. Beegle*, 52 Kan. 709, 35 Pac. 814, 39 Am. St. Rep. 365, as supporting his contention that matured crops, as between the successful plaintiff in an ejectment suit and the evicted adverse holder, do not follow the real estate, although at the time of the ouster such crops are standing unsevered upon the premises in controversy. We do not think that these cases are directly in point, and should control us in the decision of this case. There is some conflict among authorities as to when growing crops are to be regarded as personal property, and when they are to be regarded as a part of the realty. The weight of authorities supports the rule that annual crops—*fructus industriales*—are subject to levy and sale as chattels for the debts of the owner; but as between the grantor and the grantee, and as between the mortgagor and the purchaser at a foreclosure sale, they are a part of the realty and pass with the realty upon which they stand to the grantee or purchaser, unless reserved. In *Hecht v. Dettman* the defendant was a tenant of a mortgagor against whom foreclosure had been made. The plaintiff was the purchaser at the foreclosure sale, and at the time of the execution by the sheriff of the deed to plaintiff defendant, as tenant of the mortgagor, had standing upon the mortgaged premises a crop of grain, then mature and ready for harvesting, but unharvested. The court held that the matured grain, although unsevered, was personal property, and did not pass with the realty under the foreclosure deed. The

court supported its conclusion with the reasoning that, the grain being mature, the course of vegetation had ceased and the soil was no longer necessary for its existence; that the connection between it and the ground was changed, and the ground no longer performed any office other than to afford a resting place for the grain. *First Nat. Bank v. Beegle* is based upon a state of facts very similar to the facts in *Hecht v. Dettman,* and the court therein holds that, as between the tenant of the mortgagor and the purchaser at the foreclosure sale, unsevered matured crops upon mortgaged premises are personal property, and do not follow the realty, and that the character of the crops as personalty is determined by its immaturity or maturity, and not by the fact that it is severed or unsevered.

This rule of the courts of Iowa and Kansas we do not believe to be in harmony with the weight of authorities, but, whether it is or not, we think that the rule therein announced does not apply to the facts in the case at bar, and that the decided weight of authorities is that unsevered crops, although mature, are a part of the realty as between the plaintiff in an ejectment suit and the evicted defendant. When the crops become severed, they are then regarded as personal property. Upon this question there is but little or no conflict among the authorities *Phillips v. Keysaw et al., supra.*

*Tripp v. Hasceig,* 20 Mich. 254, 4 Am. Rep. 388, is a case wherein the grantor brought replevin for a crop of matured corn standing in the field unharvested at the time of the conveyance. The court in a well-reasoned opinion, supported by numerous authorities follows the doctrine which is in direct conflict with the rule in *Hecht. v. Dettman* and *First Nat. Bank v. Beegle.* The court in that case says:

"It is true that the authorities in alluding to this subject very generally use the words 'growing crops' as those embraced by a conveyance of the land, but this expression appears to have been commonly employed to distinguish crops still attached to the ground rather than to make any distinction between ripe and unripe crops."

And, further speaking of the merits of this rule, the court said:

"Indeed, the authorities are quite decisive that whether the crop of the seller of the farm goes with the land to the purchaser of the latter, when there is no reservation or exception, depends upon whether the crop is at the time attached to the soil, and not upon its condition as to maturity. And this seems to be the most natural and practical rule. When parties are bargaining about land, the slightest observation will discover whether the crops are severed or not, and there will be no room for question or mistake as to whether they belong with the land or not, if owned by the vendor."

In *Wootton v. White,* 90 Md. 64, 44 Atl. 1026, 78 Am. St. Rep. 425, the court said:

"So long as the crop remains physically unsevered, it partakes of the nature of the realty as between the mortgagor and mortgagee. It forms part of the latter's security for the payment of the debt, and all persons dealing with the mortgagor in respect to it whilst it remains actually attached to the freehold deal subject to all the rights of the mortgagee unimpaired and unaffected."

In this case the court follows the rule that as between the mortgagor or any one claiming under him, and the purchaser at the foreclosure sale, the growing crop does not become personal property until it is actually severed from the land, and, in the absence of such severance, passes to the purchaser.

In Mississippi the doctrine prevails that the execution of a mortgage vests in the mortgagee no estate in the land, but gives to him a lien thereon to secure the payment of the mortgage debt. In *Reily v. Carter,* 75 Miss. 798, 23 South. 435, 65 Am. St. Rep. 621, the Supreme Court of that state, speaking through Mr. Justice Whitefield, now Chief Justice, said:

"But after the deed has been delivered, and foreclosure sale has been confirmed, the mortgagee claims no longer under the mortgage, as a mortgagee, having a mere security for his debt and no estate in the land, but he claims as absolute owner under a confirmed sale and deed, having the whole estate in the land, and all the unsevered crops as part of the land."

No case has been called to our attention by counsel, and we

have been unable, after an extended investigation, to find any case, in which it has been held that growing crops before severance from the soil become personalty, and do not pass with the land to the successful plaintiff in an action of ejectment.

In *Craig v. Watson*, 68 Ga. 115, Watson brought suit to recover of Craig the value of a crop of which Craig had obtained possession under a judgment in an action of ejectment, and which was standing at the time of the judgment upon the land, fully matured. The crop had been cultivated and produced by Watson. The court held that the crop passed with the realty under the judgment in the action of ejectment to Craig.

*Huerstal v. Muir et al.*, 64 Cal. 450, 2 Pac. 33, is a case in point. In that case Muir, who had cultivated the crop at the time he was evicted therefrom by a writ of restitution under a judgment in an ejectment action, was harvesting a standing crop of hay. The crop was partly cut and partly uncut. The writ of restitution was served by the sheriff and Muir was removed from possession of the premises while he was in the act of cutting the crop. He brought an action for restitution of the premises for the purpose of harvesting the remainder of the crop, but the court held that the unsevered crop of hay was part of the realty, and passed to the plaintiff by virtue of the judgment in the action of ejectment.

In *Brothers v. Hurdle*, 32 N. C. 490, 51 Am. Dec. 400, the evicted claimant in an action of ejectment brought his action against the plaintiff in the ejectment suit for conversion of crops of corn, peas, and beans that were upon the premises at the time he was evicted therefrom. The fodder had been pulled and shocked, and the peas and beans had been gathered and put into a crib on the premises. The court held that the crops which were attached to the land at the time the plaintiff in the ejectment action was put into possession passed with the premises and belonged to the plaintiff in the ejectment action, but that the fodder and that portion of the other crops which had been severed, although upon the premises at the time of the ouster under the ejectment

action, did not pass with the land, but remained the property of the evicted adverse holder.

In *Page v. Fowler*, 39 Cal. 412, 2 Am. Rep. 462, the relation of the parties to the action is very similar to that between the parties in the case at bar. In that case the successful plaintiff in the ejectment action sought to recover by replevin a quantity of hay that had been cut upon the land at the time he recovered judgment in the ejectment action. The court in a full and exhaustive opinion lays down the rule that the severance of the crop from the premises constituted it personal property, and that the remedy of the successful plaintiff in an ejectment action is an action to recover rents and profits of the land. In this case the court refers to a distinction made by some cases between the rights of a trespasser and one who under color of title occupies the premises, cultivates a crop thereon to maturity, and severs the same from the soil. In some cases it held that the successful plaintiff is entitled to all crops grown, harvested, and unharvested which are upon the premises when he is placed in possession. *McCaslin et al. v. State*, 99 Ind. 428; *McLean v. Bovee*, 24 Wis. 295, 1 Am. Rep. 185.

A similar rule is to be found in *McGinnis et al. v. Fernandes*, 135 Ill. 69, 26 N. E. 109, 25 Am. St. Rep. 347. In this case at the time of judgment on the mandate from the Supreme Court in an action of ejectment wherein the plaintiff had recovered, the evicted defendant had upon the premises involved in the ejectment action a crop of corn which had been cut and placed in shocks thereon. The evicted defendant refused to deliver possession of the corn. An action of replevin was brought in which the court held that plaintiff was entitled to recover. The court in this case based its decision upon the theory that the evicted defendant was a trespasser, and had no right to plant or cultivate the crop, and that the act of cutting and severing the crop from the soil was also the act of a trespasser, and did not destroy plaintiff's title to the crop. Other courts, however, have held that, where a trespasser cultivates and severs a crop, it becomes his

property even against the owner of the land. *Lindsay v. Railway Co.*, 29 Minn. 411, 13 N. W. 191, 43 Am. Rep. 228; *Adams v. Leip*, 71 Mo. 597.

In *Baker v. McInturff*, 49 Mo. App. 505, defendant, who had been the tenant of plaintiff the preceding year, wrongfully retained possession of the premises after the expiration of his term under a claim that he had rented the same from another person who defendant alleged was the owner of the land, having acquired it under an alleged contract of sale from plaintiff. Defendant during the time that he held over planted and grew a crop of corn upon the premises. Plaintiff brought replevin to recover this crop of corn. The appellate court reversed the judgment of the trial court in favor of defendant, and, after holding that defendant was in the same position as an intruder, said:

"It is a well-settled law of this state that, where an intruder upon land plants crops thereon, such crops, so long as they remain unsevered, are regarded as the property of the landowner" —citing authorities.

The rule at common law is that one who recovers land in an ejectment action is entitled to the crops then growing on the premises. *Carlisle v. Killebrew*, 89 Ala. 329, 6 South. 756, 6 L. R. A. 617, and authorities therein cited. And in the terms "growing crops," as used in the authorities, is embraced, not only crops that are immature, but crops that are mature and are still standing unsevered upon the premises. This rule is, so far as we have been able to find, supported by all the authorities directly in point, and is expressed at page 977, 12 Cyc., in the following language:

"Where a mere intruder upon lands plants crops thereon, such crops, so long as they remain unsevered, are the property of the owner of the land. But one who sows, cultivates, and harvests a crop upon the land of another is entitled to the crop as against the owner of the land, whether he came to the possession of the land lawfully or not, provided he remains in possession till the crop is harvested."

The exact question which this case presents was never before the Supreme Court of the territory, but in *Phillips v. Keysaw*,

*supra,* the relation of the parties was the same as in the case at bar. The only difference between the facts of that case and the facts in this case is that the crops, the recovery of which was sought by that action, were growing, immature crops; but the court, speaking through Mr. Justice Tarsney in the opinion, and the entire court, speaking for themselves in the syllabus, announced the rule to be that crops, after maturity and severance from the soil, are for all purposes personal property; that, where there has been a recovery of the possession of the land held adversely, the successful plaintiff is entitled to the growing crops as against the evicted defendant who planted them, but, until such possession has been terminated by ouster, the person who cultivates and produces the crop and who holds the same adversely is entitled to the crops produced by his labor which are harvested by him before he is ousted. *Kirtley v. Dykes,* 10 Okla. 16, 62 Pac. 808, is a case in which the facts are identical with those of *Phillips v. Keyshaw* and with the facts in the case at bar, except that the crops involved were not matured. Mr. Justice Irwin, speaking for an undivided court, says:

"This court has held to the doctrine that, before crops grown upon realty could be regarded as personal property, it must not only have matured, but have been actually severed from the realty."

These two cases are cited in *Wakefield v. Dyer,* 14 Okla. 92, 76 Pac. 151, with approval. In that case the court permitted the adverse claimant who had been evicted to retain the crops which were matured and had been severed from the soil, and again stated the rule to be that, where the crops have matured and have been severed, the same become personal property. In none of these three cases decided by the Supreme Court of the territory was the question presented by the facts as to whether unharvested matured crops passed with the real estate under the judgment in ejectment to the plaintiff or remained the property of the evicted defendant, but the expression of the court in all three of these cases to the effect that, before maturity and severance, they are a part of the realty, and that, after maturity and severance, they

are personal property as between the successful plaintiff in an action of ejectment and the evicted adverse claimant, we think is the correct rule, and is supported by the weight of authorities and the best reasoning.

The judgment of the trial court is reversed and the cause remanded.

All the Justices concur.