## MOORE v. COUGHLIN.

### No. 2364.   Opinion Filed November 26, 1912.

#### (128 Pac. 257.)

1. **LANDLORD AND TENANT** — Rights of Parties — Waygoing Crops. At the common law, where land is leased for a certain number of years, and the period of its termination is fixed and certain, and the lease is silent as to who is entitled to the waygoing crop on the land at the expiration of the term, the general rule is that the offgoing tenant is not entitled to such crop; but where the covenants of the lease require the tenant to plant and cultivate in the last year of his term, a lien being reserved on the crops to secure the rent, held, that the fair import and proper construction of the lease is to give the outgoing tenant the waygoing crop.

2. **CUSTOMS AND USAGES** — Evidence — Admissibility. Where crops are standing unsevered on leased land at the expiration of the term, and the lease is silent as to who is entitled to the waygoing crops, it is proper, where a general usage prevails as to who, under such circumstances, is entitled to the crops, to plead and prove such general usage.

(Syllabus by Brewer, C.)

*Error from District Court, Kay County;*
*C. L. Pinkham, Judge.*

Action by Joe Coughlin against Reuben L. Moore. Judgment for plaintiff, and defendant brings error. Affirmed.

*B. T. Hainer, H. B. Martin, C. E. Bush, J. Y. Murry, Jr.,* and *P. W. Cress,* for plaintiff in error.

*J. F. King,* for defendant in error.

Opinion by BREWER, C.    This suit involves the common-law rule of emblements or "waygoing crops."    Joe Coughlin was a tenant of a Ponca Indian allottee, under a written lease, approved by the Secretary of Interior, which expired August 1, 1905.    Reuben Moore took a lease on the same land, beginning August 1, 1905.    This lease was not approved by the department until September 16, 1905.    When Coughlin's lease expired, he had a crop of 2,000 bushels of corn standing ungathered upon the land.    Moore, after taking possession, and over the protest of Coughlin, gathered the corn and converted it to his own use. Coughlin planted and cultivated the corn, and there is evidence that at the expiration of the lease it was matured.    Coughlin, as plaintiff below, sued Moore for the value of the corn, and recovered a verdict and judgment for $500, from which Moore appeals to this court.

The question here is:    Which of these men, the outgoing tenant, who raised the corn, or the incoming tenant, who found the corn standing unsevered from the soil on his lease, is entitled to it?    This involves a consideration of the common law, as interpreted and applied in this country.

Under the common law, the general rule seems to be that, where the term of a tenant is uncertain, and it is terminated by some cause not referrable to any act of the tenant, he, or his representative, in case of his death, is entitled to the annual crops growing upon the lands at the time the tenancy is terminated; but, upon the contrary, where the term is fixed and certain as to the time of its expiration, the tenant has no right to crops growing on the land at the time the tenancy expires.    A. & E. Ency. L. (2d Ed.) 318; 24 Cyc. 1070; Tiffany, L. & T. vol.

2, sec. 251; Washburn, Real Property (6th Ed.), vol. 1, sec. 259; *Bristow v. Carriger et al.,* 24 Okla. 329, 103 Pac. 596, 25 L. R. A. (N. S.) 451.

Under practically all the authorities, however, when crops are mature and have been severed from the soil, they become personal property and belong to the tenant (*Wakefield v. Dyer,* 14 Okla. 92, 76 Pac. 151; *Phillips v. Keysaw,* 7 Okla. 674, 56 Pac. 695) ; and there is authority that crops unsevered, but which are mature and ready for harvest, are personal property, and do not go with the land. *Hecht v. Dettman,* 56 Iowa, 679, 7 N. W. 495, 10 N. W. 241, 41 Am. Rep. 131; *First National Bank v. Beegle,* 52 Kan. 709, 35 Pac. 814, 39 Am. St. Rep. 365. But this court refused to follow these cases in *Hartshorne v. Ingels,* 23 Okla. 537, 101 Pac. 1045, 23 L. R. A. (N. S.) 531; but that case, it will be seen, was a case involving adverse possession, and was not a case between a landlord and his tenant. So, likewise, is the case of *Phillips v. Keysaw, supra,* and *Kirtley v. Dykes,* 10 Okla. 16, 62 Pac. 808.

The general rule of the common law that a tenant has no right to a crop growing on the land at the time his tenancy expires, where its expiration was fixed and certain, is not an absolute one. There are exceptions to it, especially in cases between the landlord and his tenant, or, as in this case, between the outgoing and incoming tenant of the landlord. Thus in many of the states it has been held that, where it is shown that it is the custom or usage that an outgoing tenant may take crops growing on the land at the expiration of his term, such custom or usage is enforced as though it were written into the lease. We are inclined to think this a salutary rule notwithstanding the line of authorities following. *Harris v. Carson,* 34 Va. 632, 30 Am. Dec. 510. In volume 8, A. & E. Ency. L. (2d Ed.), at page 320, it is said:

"By a custom limited to a particular part of England and to particular sections of the United States, a tenant whose term expires prior to the maturity of certain kinds of crops planted by him during the term is entitled to such crops, which are known

as 'waygoing crops.' Where such a custom exists, it constitutes as much a part of the lease as if such an understanding were expressed."

See, also, volume 1, Washburn, Real Property, 268, and cases cited; 24 Cyc. 1069; *Stephenson v. Elliott,* 2 Ind. App. 233, 28 N. E. 326.

In this case it was attempted to be shown by numerous witnesses, including the agent in charge of the leasing and collecting the rents from the lands of Ponca Indian allottees, that such usage prevailed and was general and well understood in the section of the state where this controversy arose; but this evidence was refused by the court on objection from defendant Moore. We think this was error; but if the case can be affirmed on the record as it is made this is immaterial, because the error was to the advantage of appellant Moore.

Another exception to the general rule is stated thus in the text of 24 Cyc. 1069:

"Where, however, the lease, expressly or by implication, recognizes the right of the tenant to sow in the last year of his term, the general rule is that he has the right to harvest the waygoing crop, where the lease is silent as to who is entitled thereto; and where there is an express agreement that the tenant shall have the waygoing crop he is, of course, entitled thereto."

That a tenant at sufferance takes the crop, under a parol agreement with the landlord so to do before eviction, is held in *Bristow v. Carriger et al.,* 24 Okla. 324, 103 Pac. 956, 25 L. R. A. (N. S.) 451, and where the right is expressed in the lease, in *Miller v. Clement,* 40 Pa. 484.

That, where the lease recognizes the right of the tenant to sow in the last year of his term, he is entitled to the waygoing crops has been expressly held in *Kelley v. Todd,* 1 W. Va. 197, wherein it is said in the syllabus:

"At the common law, where land is leased for a certain number of years, and the period of its termination is fixed and certain, and the lease is silent as to who is entitled to the waygoing crop on the land at the end of the term, the offgoing tenant is not entitled to such crop; but where the lease recognizes the right to sow in the last year of the term, and the tenant is restricted to the cultivation of certain portions of the land and

pays an equal annual rental sum for its use, he has a right to reap the waygoing crop, where the lease is silent as to who is entitled thereto."

And in *Goodwin v. Clover*, 91 Minn. 438, 98 N. W. 322, 103 Am. St. Rep. 517, which was a case where a tenant, under an invalid lease, raised crops, and an incoming tenant, under a valid lease, converted them, the court, in the course of the opinion holding in favor of the tenant who raised the crops, says: *"The fair import of the contract under which he entered would permit him to remove the crops."* (Italics ours.) The decision in that case, however, is not finally rested on this principle.

We have examined the lease under which the plaintiff in this case, Coughlin, the outgoing tenant, held; and we think the fair import to be gathered from its terms is to give the outgoing tenant the waygoing crops standing upon the land, fully grown and practically matured, but unsevered, at the expiration of his term. One of the covenants of the lease is to prepare and cultivate the entire acreage *each year of the term*. A lien is reserved on the crops of each year to secure the payment of the rent. The tenant paid full cash rent for the full two years. If he could not sow and reap in the second year, it would follow that he would have to pay two years' rent for one year's crop. This surely could not have been the intention of the parties. If the tenant had not planted crops in the spring of 1905, he would have breached the covenants of his lease, and would have defeated the lien security for the rents. Therefore the lease not only rcognized the tenant's right to sow in the last year of his term, but by its solemn covenants bound him to do so. This is an agricultural state, and its policy ought to be to encourage husbandry with the hope and reasonable expectation that he who sows in peaceful and lawful possession and good faith will be permitted to reap; and the law ought not to allow one who toils not to gather, and who sows not, nor cultivates, to reap the harvest, if it can be avoided under any logical and reasonable theory supported by respectable authority. This case is so supported.

It only remains to be noted that, the construction of this lease being for the court, and, under its proper construction and the evidence, the plaintiff being clearly entitled to recover, and the question of the amount and value of the corn converted having been properly submitted to the jury, there was no reversible error in refusing the instructions requested by defendant, although under some situations, in such cases, some of those instructions would have been proper.

It follows that the judgment of the trial court should be affirmed.

By the Court:   It is so ordered.