# GOLDEN VALLEY LAND AND CATTLE COMPANY v. JOHN JOHNSTONE.

(128 N. W. 691.)

**Vendor and Purchaser — Forfeiture of Contract — Right to Crops after Forfeiture — Election of Remedies — Action to Determine Adverse Claims.**

   1. Without deciding whether § 5710, Rev. Codes 1905, which makes one who wrongfully retains a thing an involuntary trustee thereof for the benefit of the owner, and § 5711, Rev. Codes 1905, which provides that one who gains possession of a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, have any application

---

Note.—As to measure of damages generally against vendee for refusing to perform his contract to purchase, see note in 67 Am. Dec. 275. The question of measure of damages for breach of executory contract is the subject of a note in 42 Am. Dec. 48.

to a crop raised on land and severed therefrom by one who retains possession thereof after default by him in the terms of an executory contract of purchase, and after the statutory notice has been served on him of the forfeiture and cancelation of such contract, it is *held*, where the vendor has never been in possession of such land, and two years before the crop in controversy was severed therefrom had commenced an action to determine adverse claims thereto, in which the only money judgment demanded was for the value of the use and occupation thereof, and he has remained silent until after the harvesting of two crops,—that he has thereby elected to stand upon his right to recover for the use and occupation, and has waived his right, if any, to recover the value of the crop so raised and severed by the vendee.

**Adverse Claims — Vendor and Purchaser — Contract — Crops after Forfeiture.**

2. In an action to determine adverse claims to real estate under § 31, Rev. Codes, 1905, brought by the vendor on an executory contract for the sale of land, the plaintiff cannot recover both for the value of the crop raised after forfeiture of the contract by the vendee, and for the use and occupation of the land on which the crop was raised, after severance of such crop from the land.

**Adverse Claims — Action — Scope of Recovery — Money Judgment — Use and Occupation.**

3. Sections 7520 and 7534, Rev. Codes 1905, define the nature of the recovery, which may be had by plaintiff in actions to determine adverse claims to real property, and a plaintiff who has proceeded under the provisions of said chapter can only recover a money judgment for the value of the use and occupation, except when he shows damages by waste or removal of the property from the premises.

**Question Undecided — Statutory Construction.**

4. It is held that under the facts of this case it is unnecessary to decide whether § 4752, Rev. Codes 1905, which provides that the owner of a thing owns all its products and accessions, establishes title to grain raised on land and severed therefrom by one holding possession thereof after forfeiture of an executory contract of purchase, in the vendor as against his vendee, when such vendor has never been in possession of the land, but a review of the authorities discloses them overwhelmingly in favor of ownership in the grower of the crop.

**Vendor and Purchaser — Breach of Contract — Liens on Crops — Use and Occupation.**

5. The vendor, under an executory contract for the sale of land, who is not and never has been in possession thereof, under the facts disclosed in this case and set forth in the opinion, has no lien upon the crop raised and severed by the vendee in possession, as security for the value of the use and occupation.

**Vendor and Purchaser — Forfeiture of Contract — Recovery of Severed Crops.**

6. It is *held*, that the vendor, under the facts, circumstances, and pleadings above referred to, cannot have a receiver to take possession of and conserve the crop so raised, after its severance, for the purpose of subjecting it to his claim for the value of the use and occupation of the premises after forfeiture by the vendee of his contract of purchase.

Opinion filed November 23, 1910.

Appeal from the District Court of Billings county; *Crawford, J.*

Action to determine adverse claims to real property. From an order denying plaintiff's application for the appointment of a receiver *pendente lite,* plaintiff appeals.

Affirmed.

*Purcell & Divet* and *MacFarlane & Murtha,* for appellant.

Failure of one party to perform authorizes the other to abandon the contract. Stanford v. McGill, 6 N. D. 543, 38 L.R.A. 760, 72 N. W. 938; Giltner v. Rayl, 93 Iowa, 16, 61 N. W. 225.

So an attempted modification. Egger v. Nesbitt, 122 Mo. 667, 43 Am. St. Rep. 596, 27 S. W. 385; Crabtree v. St. Paul Opera-House Co. 39 Fed. 746; Ortman v. Weaver, 11 Fed. 358; 3 Page, Contr. §§ 1436–1443; Johnson Forge Co. v. Leonard, 3 Penn. (Del.) 342, 94 Am. St. Rep. 86; Stephenson v. Cady, 117 Mass. 6; Bryson v. McCone, 121 Cal. 153, 53 Pac. 637.

Defendant is a trustee in possession of lands, liable to account for rents and profits. Rev. Codes, 1905, §§ 5710, 5711; Stebbins v. Demorest, 138 Mich. 297, 101 N. W. 528; Page v. Fowler, 39 Cal. 412, 2 Am. Rep. 462; McGinnis v. Fernandes, 135 Ill. 69, 25 Am. St. Rep. 347, 26 N.E. 109; 2 Story, Eq. Jur. §§ 1254–1266; Bullard & T. Tr. p. 113; Crooks v. Whitford, 40 Mich. 599; 3 Pom. Eq. Jur. §§ 1051–1053; American Soda Fountain Co. v. Futrall, 73 Ark. 464, 108 Am. St. Rep. 64, 84 S. W. 505; Humphreys v. Butler, 51 Ark. 351, 11 S. W. 479; Rieper v. Rieper, 79 Mo. 352; Boylan v. Deinzer, 45 N. J. Eq. 485, 18 Atl. 119; Huntley v. Denny, 65 Vt. 185, 26 Atl. 486; Paige v. Akins, 112 Cal. 401, 44 Pac. 666.

*Heffron & Baird* and *J. A. Miller,* for respondent.

Receiver may be appointed to hold crops in ejectment. Ireland

v. Nichols, 37 How. Pr. 222; American Freehold Land Mortg. Co.
v. Turner, 95 Ala. 272, 11 So. 211; Hendrix v. American Freehold
Land Mortg. Co. 95 Ala. 313, 11 So. 213.

Inability to attach is a reason for receivership. Bitting v. Ten
Eyck, 85 Ind. 357; Ulman v. Clark, 75 Fed. 868; Whitney v. Buck-
man, 26 Cal. 448, 10 Mor. Min. Rep. 428; Flagler v. Blunt, 32 N. J.
Eq. 518; People v. New York, 10 Abb. Pr. 111.

Party cannot recover for use and occupation of land and the crops
too. Rev. Codes, 1905, § 7520; Aultman & T. Co. v. O'Dowd, 73
Minn. 58, 72 Am. St. Rep. 603, 75 N. W. 756; Churchill v. Acker-
man, 22 Wash. 227, 60 Pac. 406.

Where a trespasser sows a crop and harvests it, he can hold it against
the landowner. Churchill v. Ackerman, 22 Wash. 227, 60 Pac. 406;
Adams v. Leip, 71 Mo. 597; Jenkins v. McCoy, 50 Mo. 348; Harris
v. Turner, 46 Mo. 438; Brothers v. Hurdle, 32 N. C. (10 Ired. L.)
490, 51 Am. Dec. 400; Faulcon v. Johnston, 102 N. C. 264, 11 Am.
St. Rep. 737, 9 S. E. 394; Hinton v. Walston, 115 N. C. 7, 20 S. E.
164; Page v. Fowler, 39 Cal. 412, 2 Am. Rep. 462; Groome v. Alm-
stead, 101 Cal. 425, 35 Pac. 1021; Johnston v. Fish, 105 Cal. 420,
45 Am. St. Rep. 53, 38 Pac. 979; Stockwell v. Phelps, 34 N. Y. 364,
90 Am. Dec. 710; Phillips v. Keysaw, 7 Okla. 674, 56 Pac. 695;
Lindsay v. Winona & St. P. R. Co. 29 Minn. 411, 43 Am. Rep. 228,
13 N. W. 191; Woodcock v. Carlson, 41 Minn. 542, 43 N. W. 479;
Aultman & T. Co. v. O'Dowd, 73 Minn. 58, 72 Am. St. Rep. 603, 75
N. W. 756.

Crops severed are personal property. Phillips v. Keysaw, 7 Okla.
674, 56 Pac. 695.

SPALDING, J.  This case is here on appeal from an order denying
plaintiff's application for the appointment of a receiver to take charge
of and conserve a crop of wheat grown upon section 13 in township
138 N. of range 106 W., in Billings county, North Dakota, during
the season of 1909. The action was brought in August, 1907, and the
original complaint is substantially in the statutory form for the de-
termination of adverse claims to real estate. The relief demanded is
the customary relief sought in such actions and that plaintiff recover
$500 as the value of the use and occupation of the premises. The

answer denies most of the allegations of the complaint, and sets forth a contract, wherein plaintiff agreed, on the 18th of January, 1906, to sell and convey to defendant, by warranty deed, upon the performance by defendant of his part of the agreement, said section 13. The consideration which defendant agreed to pay was $8,000, and it was to be paid by conveying by warranty deed, free from encumbrance, certain property in Sioux Falls, South Dakota, at a consideration of $4,200, to be deeded to plaintiff on its delivering to defendant executory contracts covering said section 13 showing certain balances due thereon. The first act to be done by the plaintiff was to furnish the defendant executory contracts which it held for such land, it not then having the title. The papers were to be exchanged on or before April, 1906. It is then alleged in the answer that the defendant then was, and had been at all times, ready and willing to perform his part of such contract, but that plaintiff had failed and neglected to perform his part thereof, and judgment was demanded by the defendant finding the amount due plaintiff, and directing it to convey such land in accordance with such contract. In September, 1909, on the return of an order to show cause, amended and supplemental complaints were allowed to be served and filed. The only variance between the original and amended complaints necessary to note consists in alleging the value of the use and occupation of said section 13 as $1,000 per annum, instead of $500, and that defendant's claims were in bad faith. The supplemental complaint alleges that the defendant had, without authority of law and in bad faith, entered upon said land in 1908 and cropped 320 acres thereof, and had never accounted to plaintiff therefor, and that such crop was of the value of $2,500; that in 1909 he had in the same manner again entered and cropped 320 acres of said land, and it is alleged that at the time said complaint was drawn, namely, September 1, 1909, such crop was either being or about to be harvested and was of the value of $3,000. Included in the relief asked is a prayer that the court adjudge the crop raised during the year 1909 to be the property of the plaintiff, free and clear of all claims of defendant, and for the appointment of a receiver *pendente lite* to take charge of and conserve the same. A hearing was had upon the application for the receivership, and we gather from the evidence there submitted that the controversy between the parties had related to the duty of the plaintiff to show title in itself

before defendant could be required to deed the Sioux Falls property, the defendant laboring under the belief that plaintiff must show title in itself. Martinson v. Regan, 18 N. D. 467, 123 N. W. 285. There is a conflict in the evidence as to whether plaintiff ever submitted the contract called for to the defendant, or demanded the delivery of a deed in exchange therefor. One of plaintiff's witnesses testified that on May 10, 1907, notice was served on defendant of the cancelation of the contract in question for default therein, in all things in accordance with §§ 7494 to 7497, Rev. Codes 1905, and that such notice became effective June 11, 1907, but the notice was not placed in evidence and the statements of the witness were mere conclusions of law. We shall, however, consider the matter as though proof of legal service of the necessary notice to declare the contract forfeited and canceled had been made. The defendant paid no attention to such notice, but remained in possession without disturbance and with no demand ever made for the surrender of his possession and the evidence fails to disclose that the plaintiff was ever in actual possession or occupancy of the premises. For some reason issue was not joined on the original complaint until December, 1908, or January, 1909, and no answer had been served to the amended and supplementary complaints, a demurrer thereto being pending. The evidence shows that the crop was severed not less than two weeks before the amended and supplementary complaints were served and the application for a receiver heard. The trial court, in its order refusing to appoint a receiver, found that the defendant was insolvent, and that as a matter of discretion, on the facts before it, a receiver was necessary to protect the plaintiff's rights in the crop of 1909, but that as a matter of law the court was without legal authority to appoint a receiver. Upon notice that the plaintiff would appeal, an order was entered permitting the defendant to dispose of the crop and deposit the proceeds, with the exception of $500, in any reputable banking institution in Billings county, subject to the order of the court. No objection was made to this order by either of the parties. It is apparent that the court found that plaintiff had some rights in the crop of 1909. In this we do not concur. Much is said in the brief about the fact of the bad faith of the defendant, and much stress is laid by appellant on the evidence showing bad faith, and it is contended that the rights of the plaintiff are dependent, to some extent,

upon that question. From our view of the law as applied to the facts before us, we deem it immaterial whether defendant was acting in good or bad faith. Many interesting questions are raised and discussed, but, for reasons which it is unnecessary to state, an immediate decision of this appeal is imperatively necessary, and we cannot devote the time necessary to a determination of any questions except these which we consider essential to a bare decision of plaintiff's right to a receiver.

One of appellant's contentions is that, under § 5710, Rev. Codes 1905, which makes one who wrongfully retains a thing an involuntary trustee thereof for the benefit of the owner, and § 5711, providing that one who gains possession of a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it, defendant is a trustee of the grain raised during the season of 1909 for its benefit. We need not determine whether either of these provisions might ever be applicable to the facts disclosed on the hearing, because plaintiff itself has effectively disposed of this contention. It concedes that the landowner may elect to take the value of the use and occupation or certain other damages, or that he may waive the value of the use and occupation and elect to take the crop. In the case at bar plaintiff, in bringing this action, elected in a most effective manner to claim only the value of the use and occupation of the premises from defendant. This election was made August 6, 1907, and until September, 1909, no step is shown to have been taken by plaintiff in any manner disaffirming its election so made, and such election was reaffirmed in its amended complaint. In the original complaint it did not intimate that it claimed to be the owner of the crops which had been or might be raised by the defendant; it stood by and permitted the defendant to crop the land for two seasons after making this election, and only sought to disaffirm it when the defendant, by his industry aided by the favorable elements of nature, had raised and harvested a crop valued at over $6,000. It would seem that, as long as poor or ordinary crops were raised, plaintiff was content to rest upon its claim for the value of the use and occupation of the premises. It is clear, in the absence of such concession on its part which is made in its brief, that it is not, under the circumstances of the case, entitled

to recover both the value of the use and occupation and the crop or damages equaling its value. It is hardly necessary to call attention to the extraordinary results which would follow a holding that it might do so. The result, however, would be that the defendant would be paying the plaintiff for the privilege of furnishing the seed, all the labor, and machinery necessary to sow and harvest the crop, and at the same time giving plaintiff the entire crop raised by his industry. In other words, defendant would be paying rent to plaintiff for the privilege of raising a crop for plaintiff.

We find still another reason why the plaintiff's right to recover is limited. It has seen fit to proceed against the defendant under the provisions of chapter 31, Rev. Codes 1905. This chapter provides for actions to determine conflicting claims to real property, and § 7520, the second section in said chapter, and § 7534, fix the nature of the recovery which may be had in an action brought under that chapter. The last-numbered section is not applicable to the case at bar, but § 7520 provides that a recovery may be had in an action by any party against the defendant personally served or who has appeared, or against the plaintiff, for the value of the use and occupation of the premises and for the value of the property wasted or removed therefrom, in case of a vendee holding over or a trespasser, as well as in case where the relation of vendor has existed. If such recovery is desired by plaintiff, he shall allege the fact, stating particularly the value of the use and occupation, the value of the property wasted or removed, and the value of the real property aside from the waste or removal, and demand appropriate relief in his complaint. A recovery of possession may also be had by the plaintiff or any defendant asking for the affirmative relief.

We think this plaintiff, who has proceeded under the chapter named, is limited to damages for the use of the land in case of his recovery. What we have already said shows the inequity and injustice of the rule contended for by appellant. In Aultman & T. Co. v. O'Dowd, 73 Minn. 58, 72 Am. St. Rep. 603, 75 N. W. 756, this question is directly passed upon, and the supreme court of that state says: "The fact that the owner of the premises may recover the rents and profits of the land for which it is being withheld precludes the idea of his right to recover the crops. It is the value and use of the land which the

owner recovers; and not the fruits of the land. A contrary rule would give the owner the value of the use of the land and the value of the labor of the farmer in producing the crop, for the crop contains the value of both. In this case not only did Nelson sow and care for the crop before plaintiff became the owner of the land, but he continued in possession of the same thereafter, and was permitted to harvest and thresh it and remove the same to his own granary. It would be an oppressive rule to permit the plaintiff to remain inactive while this was going on and Nelson adding to the gross value of the crop he had raised in the course of months of husbandry, and then deprive him of the entire property. We sanction no such rule." See also Brown v. Newman, 15 N. D. 1, 105 N. W. 941, which has some bearing on this question.

Section 4752, Rev. Codes 1905, provides that the owner of a thing owns all its products and accessions, and it is urged that this makes the appellant the owner of the crop raised on the land in controversy. No authorities are cited, and it is stated in appellant's brief that this statute has never been construed. Without deciding whether this section has any application to the present controversy, we remark that we have the impression that the word "accession" thus used applies to things added to the realty, and that there may be a point of time when the products of a farm cease to be the property of the owner of the land, and that where a crop has been raised by one in adverse possession, it ceases to be the property of the owner of the fee out of possession and becomes the property of the adverse possessor on its severance from the soil. We cite some authorities to this effect: Churchill v. Ackerman, 22 Wash. 227, 60 Pac. 406; Stockwell v. Phelps, 34 N. Y. 363, 90 Am. Dec. 710; Page v. Fowler, 39 Cal. 412, 2 Am. Rep. 462; Martin v. Thompson, 62 Cal. 618, 45 Am. Rep. 663; Lindsay v. Winona & St. P. R. Co. 29 Minn. 411, 43 Am. Rep. 228, 13 N. W. 191; Woodcock v. Carlson, 41 Minn. 542, 43 N. W. 479; Aultman & T. Co. v. O'Dowd, 73 Minn. 58, 72 Am. St. Rep. 603, 75 N. W. 756; Phillips v. Keysaw, 7 Okla. 674, 56 Pac. 695; Kirtley v. Dykes, 10 Okla. 16, 62 Pac. 808; Killebrew v. Hynes, 104 N. C. 182, 17 Am. St. Rep. 672, 10 S. E. 159, 251; Hinton v. Walston, 115 N. C. 7, 20 S. E. 164; Jenkins v. McCoy, 50 Mo. 348; Dollar v. Roddenbery, 97 Ga. 148, 25 S. E. 410; 8 Ballard, Real Prop. § 99; Cobbey, Replevin,

§ 378; Shinn, Replevin, § 227; 12 Cyc. Law & Proc. p. 977; 8 Am. & Eng. Enc. Law, p. 329. Many authorities are to the effect that even a trespasser or intruder is entitled to the crops raised by him, that is, crops not *fructus naturales,* after severance. Although the subject is elaborately discussed in many of these opinions, we only refer to one which seems to be most directly in point. In Churchill v. Ackerman, supra, the facts, in brief, were as follows: The defendant entered into possession of land in January, 1892, under a contract whereby the Northern Pacific Railway Company agreed to sell him such land. The contract provided that it should be forfeited in case of default, by serving notice upon the vendee in a manner substantially the same as that required by the statute of this state, and served by the appellant upon the respondent herein. On the defendant defaulting, the railway company, in October, 1896, notified him as provided in the contract, that all his right, title, interest, estate, and possession of, in, or to such land under said contract, had been wholly forfeited and terminated, and on the 31st of December, 1896, the defendant was again served with notice of forfeiture. The defendant remained in possession until about the 20th of August, 1897, and raised a crop during the season of 1897. About the 23d of July, 1897, the railway company sold by a similar contract the land to the plaintiff, who entered thereon and took 100 sacks of wheat raised, harvested, and threshed during that season by the defendant. The suit was brought to recover the value of the remainder of the wheat which had been retained by the defendant, and the court held that the title to crops follows actual possession, and not a right to possession merely, and that, therefore, when a person in adverse possession severs crops before recovery, the title is in him, and that the plaintiff could not recover for the crops raised and harvested by the defendant, although the crop was sown and the work of raising it all done subsequent to the notice of forfeiture taking effect, but that the defendant might recover from the plaintiff for the value of the crop so taken by him.

To entitle the appellant to a receiver of the crops raised in 1909, it is necessary for it to show ownership of the crop or some interest in it by way of lien or otherwise. Further discussion as to its ownership is unnecessary. That it had no lien upon it is clear. The contract between the parties created no lien in favor of the vendor on the

crop after severance. The debt of the respondent to the appellant,. if any, either before or after judgment, for the use and occupation,.. would be an unsecured indebtedness as to personal property of defend- ant until a levy of execution. To hold plaintiff entitled to a receiver· to take possession of and conserve the crop, after severance, for the· purpose of subjecting it to its claim for the value of the use and occu- pation, would be in effect to hold that any creditor may obtain a re- ceiver over personal property, before judgment, to secure the payment: of any simple and unsecured debt. Neither our statute nor the policy· of our laws contemplates any such remedy.

The doctrine is thus stated: "To warrant the interposition of a court of equity by the aid of a receiver, it is essential that plaintiff' should show, first, either a clear legal right in himself to the property in controversy, or that he has some lien upon it, or that it constitutes. a special fund out of which he is entitled to satisfaction of his demand,. and, secondly, it must appear that possession of the property was ob- tained by defendant through fraud; or that the property itself or the· income from it is in danger of loss from the neglect, waste, miscon- duct, or insolvency of the defendant. . . . It is in all cases essen- tial to the exercise of the jurisdiction that the plaintiff should have a. present, existing interest in the property over which he seeks to have· a receiver appointed." High, Receivers, §§ 11 & 12.

We are compelled to hold that a case was not made on the hearing: on which the court could appoint a receiver.

The order of the District Court is affirmed.