Esther Hill CHAPIN, Individually and as Executrix of the
Estate of Samuel C. Chapin, Deceased *v.* J. C. STUCKEY,
Successor Trustee under the Will of Samuel C. Chapin,
Jane Lee Chapin RIDDLE, Samuel Caryl CHAPIN, Judd
Valmore CHAPIN, Jr. and Ernestine CHAPIN

85-15                                              692 S.W.2d 609

Supreme Court of Arkansas
Opinion delivered July 1, 1985

Fendler, Gibson & Bearden, by: Oscar Fendler and Michael L. Gibson, for appellant.

E. L. Schieffler, Noyl Houston, Keith Blackman, and Larry Jennings, for appellees.

STEELE HAYS, Justice. This appeal concerns the appointment of a receiver to manage Judd Hill Plantation, 4,761 acres of farm land in Poinsett County, Arkansas.

In 1933 Judd Hill gave the plantation bearing his name to his daughter, Esther Hill Chapin and to her husband, Samuel C. Chapin. Thereafter, the Chapins farmed the lands until 1976 when Samuel Chapin died, survived by Esther and three children of a deceased son. The will of Samuel Chapin purported to leave one-half of his estate to Esther and the other half in trust for the support, education and maintenance of his grandchildren and their mother. The trustee was directed to retain the farm intact and operate it in conjunction with Esther Hill Chapin until the trust vested on the youngest grandchild reaching age thirty.

Mrs. Chapin promptly petitioned for her appointment as executrix of the will, which was ordered, and later for an order of partial distribution of one-fourth of the plantation to the trustee,

Mercantile Bank of Jonesboro. Her petition asked that upon completion of farming operations for the current year, 1980, the remaining distributive share of the plantation under the will be paid to the trustee, which included one-fourth of the farming equipment and machinery. The partial distribution was ordered and in September, 1980, Mrs. Chapin gave an executrix's deed to the trustee conveying an undivided one-fourth of the farm lands to the trustee.

In June of 1981, Mercantile Bank, alleging that it had been unsuccessful in funding the trust by rental arrangement for the one-fourth interest in the plantation, asked the Poinsett Chancery Court to relieve it as trustee, its petition noting there were no assets available for distribution and that the beneficiaries of the trust were demanding distribution. The petition was granted and J.C. Stuckey was named successor trustee.

In May, 1984, the successor trustee filed a petition in the chancery suit naming Esther Hill Chapin as defendant, claiming ownership by the trust of one-fourth of the lands and farm machinery and equipment, and alleging irreparable injury to the trust because of waste and mismanagement of the farm by Mrs. Chapin. The trustee alleged that he was unable to discharge his fiduciary obligations because of the defendant's refusal to permit him to come upon the lands. Other allegations included specific instances of loss to the trust because of neglect and mismanagement, refusal to account, to permit the trustee to examine records, or to discuss farming operations with the trustee. The trustee asked that a receiver be appointed to take charge of the lands, equipment, bank account and records. The appointment of a receiver was supported by the Chapin grandchildren, who moved to intervene.

After a hearing the Chancellor found that Esther Hill Chapin owned an undivided three-fourths of the plantation, with the trust owning an undivided one-fourth of the land and one-fourth of the personal property, subject to the termination of the probate proceedings. The Chancellor also found that Mrs. Chapin was not capable of prudent management of the plantation, that continued efforts by her would result in material and irreparable injury to the trust, and that a receiver should be appointed over the lands and farming equipment. James O.

Campbell was appointed.

I

Esther Hill Chapin has appealed from the decree, urging the Chancery Court was without jurisdiction to entertain an action brought solely for the appointment of a receiver. She argues the appointment of a receiver was the only relief sought by the successor trustee and beneficiaries of the trust, and was not ancillary to any other proceeding then pending against the estate or against Mrs. Chapin. In that connection, we need not decide whether the proceeding involving the Chapin estate still pending in Poinsett Probate Court, or the proceeding pending in the Poinsett Chancery Court over the affairs of the trust, from which this appeal springs, are sufficient in themselves to meet that requirement, because we disagree appellant's contention that the Chancellor lacked jurisdiction to appoint a receiver. We believe the decision was within his discretion under the law and that that discretion was not abused.

Appellant's brief cites numerous cases and articles stating the rule to be that the appointment of a receiver is allowable only in connection with an action pending for some other purpose, to which the appointment of a receiver will be an aid. 65 Am.Jur.2d, Receivers, § 25, p. 878. We take no exception to the basic principle that receivership is not an end unto itself, but is ancillary to some proceeding over which the court has jurisdiction. We believe it is a broad statement of the law which is generally true, but is neither categorically nor invariably so. It is not, as appellant insists, a characteristic to be rigidly applied. Appellant contends the principle rises to the level of a jurisdictional requirement, to the end that unless the objective of the litigation which the receivership accompanies can be sharply distinguished from the receivership itself, the power of the court to appoint a receiver is so lacking that jurisdiction itself fails. We do not find the rule to be so absolute.

Examples are readily found. In *Gross* v. *Missouri & Arkansas Railway Co.*, 74 F. Supp. 242 (W.D. Ark. 1947), cited by appellant, Judge John E. Miller, while hinting that grounds for the appointment of a receiver were lacking, justified the appointment because the litigants were in agreement that a receiver would be beneficial. The opinion notes the appointment of

receivers comes within the extraordinary powers of a court of equity, Judge Miller's only concern being whether the appointment constituted an abuse of discretion. Since the parties were not objecting, he declined to inquire into that issue on his own. Nothing in the opinion casts any doubt on jurisdiction, which even the consent of the parties cannot create. *California* v. *LaRue*, 409 U.S. 109 (1972).

Of course, these parties are sharply divided over the appointment of a receiver, and in that respect this case differs from *Gross*. But the usefulness of a receiver in the unusual situation presented here was obviously apparent to the Chancellor, and is equally evident to us, as an efficient antidote for the problem, i.e. managing a diverse and complex farming operation which the common owners were unable to accomplish for themselves. It would be difficult to conceive of a more expeditious solution under the law to what can only be seen as a stalemate between Mrs. Chapin and the trustee, to the serious detriment of the beneficiaries.

A broad review of the discussions on the subject leads to the conclusion that the appointment of receivers rests within the discretion of courts of equity, to be exercised with restraint and caution, to be sure, and ordinarily only in conjunction with a pending proceeding, and rarely as a means in itself, but whenever unusual circumstances warrant. Among the situations warranting receivers are: when necessary to the best interests of both parties, *Heinze* v. *Butte*, 126 F. 1 (9th Cir. 1903), or where waste is occurring, 65 Am.Jur.2d § 35, p. 884, or where a cotenant wrongfully assumes exclusive possession of common property, or mismanages common property so as to cause its loss, or where the preservation of the subject matter of the suit requires it, id. § 57. The authors of Am.Jur.2d state, "There is no doubt of the power of a court of equity to appoint a receiver in a suit between cotenants." And, "[m]any of the cases imply, or in some other manner give support to the proposition, that the act of one cotenant in wrongfully assuming exclusive possession of the common property may, in a proper action, be *in itself* sufficient grounds for the appointment of a receiver." Id, § 57. (Our italics).

An ALR article dealing with the appointment of receivers in disputes between owners of undivided interests states:

In so far as concerns "power," in the strict sense, the cases leave no doubt that in a suit in equity between cotenants or persons claiming successive interests in real or personal property the court has inherent power to appoint a receiver to preserve, pendente lite, the subject matter of the litigation. Furthermore, *trial courts are ordinarily permitted to exercise that power with considerable discretion in determining whether, under particular circumstances, a receivership is reasonably required.* The power to appoint a receiver is, of course, a harsh and dangerous one, and should be exercised with great circumspection. *Kory* v. *Less,* 180 Ark. 342, 22 S.W.2d 25 (1929). 'The cases in which receivers ordinarily will be appointed are confined to those in which it can be established to the satisfaction of a court that the appointment of a receiver is necessary to save the property from injury or threatened loss or destruction, or that the claimants in possession are excluding another party from rights which the latter has in the land.' *Saylor* v. *Hilton,* 190 Ky. 200, 226 S.W.2d 1067 (1921). (Out italics).

■ We believe our own statutes on receivership are consistent with this interpretation, that is, that the power of equity courts to appoint receivers is not as narrowly restricted as appellant insists, that some elasticity is intended. ARCP Rule 66, provides that courts of equity "may appoint receivers for any lawful purpose when such appointment shall be deemed necessary and proper." The rule supersedes the most recent statute on the subject, Ark. Stat. Ann. § 36-101 et seq. (Repl. 1962), and the Reporter's Notes indicate the procedure remains essentially the same under Rule 66 as it did under prior Arkansas law, which prompts Mrs. Chapin to argue that under prior case law such appointments must be ancillary to some other cause of action then existing. As we have said, none of our cases reach that specific holding, although admittedly the dictum of some lend support to the argument. In *District No. 21, United Mine Workers of America* v. *Bourland,* 169 Ark. 796, 277 S.W. 546 (1925), while we said the pendency of a suit was an "absolute prerequisite" to the appointment of a receiver, it must be noted that in *Bourland* we reversed the Chancellor's appointment of a receiver because the pending suit was wholly beyond equity jurisdiction, it being

"nothing more than a tort action for unliquidated damages," sounding only at law.

Among the statutes which Rule 66 replaces is Ark. Stat. Ann. § 36-112 (Repl. 1962), which employs the same broad wording as the rule:

> In an action . . . between partners or others jointly owning or interested in any property or fund, on the application of plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured, the court may appoint a receiver to take charge thereof during the pendency of the action. . . .

This broadly stated provision has existed in our statute law since at least the adoption of the Arkansas Civil Code in July, 1868. We believe the wording of the rule and the statutes which shaped it imply that chancellors have inherent discretion to appoint receivers when they find it necessary to accomplish a proper end.

Mrs. Chapin puts particular reliance on *Gordon* v. *Washington*, 295 U.S. 30 (1934), where the Supreme Court reversed the Circuit Court of Appeals, Third Circuit, in affirming the appointment of receivers by a District Court, sitting in equity. The *Gordon* court emphasized an important difference between its facts and the facts of the case before us:

> Even when the bill of complaint states a cause of action in equity, the summary remedy by receivership, with the attendant burdensome expense, should be resorted to only on a plain showing of some threatened loss or injury to the property, which the receivership would avoid. Here, no such showing was made. (At p. 39).

In sharp contrast to the facts in Gordon, the facts here are that not only were the appellees confronted with a *threatened* loss, there was substantial proof before the Chancellor that the trust was sustaining an actual loss attributable to Mrs. Chapin. We conclude that the situation justified the appointment of a receiver and the Chancellor did not err.

## II

Mrs. Chapin's second point for reversal is the trial court lacked subject matter jurisdiction for the appointment of a receiver, since the appellees failed to establish the requisite jurisdictional facts of an ownership interest in the property.

The argument is that Samuel C. Chapin and Esther Hill Chapin owned Judd Hill Plantation as tenants by the entirety, and not as tenants in common, as Samuel Chapin's will mistakenly assumed. Thus, when Samuel Chapin died in 1976, Mrs. Chapin acquired all the lands by survivorship.

If there was a mistake, it was honored in the observance over a span of years—from Samuel Chapin's death until the latter part of 1984, well after the decree appealed from—during which Mrs. Chapin proceeded in accordance with the will and trust, including the conveyance of an undivided one-fourth interest in the farm lands to the trustee, "to be held and managed in accordance with the will of Samuel C. Chapin."

Whether mistaken or intended, it is not for this court, acting in review and with no record whatever on the point, to decide what the consequences of that long standing "mistake" should be. Were we to attempt it, there would still be the issue of the receivership over the undivided personal property, covering innumerable items of farm machinery and equipment, a sizeable bank account and records, all of which have been unproductive to the trust because of the impasse.

Whatever else may be said, this issue was not raised before the trial court until nearly four months after the decree in the form of motions to reconsider and modify the decree. Beginning with the petition of the Mercantile Bank in 1981, in this same chancery proceeding, the claim of the trustee to be the owner of an undivided one-fourth of the Judd Hill Plantation has not been controverted. The verified petition of the successor trustee for the appointment of a receiver, filed in this case in May 1984, specifically alleges that under the will of Samuel C. Chapin the trust is the owner of an undivided one-fourth of the lands in question. By way of amendment, the trust claimed ownership of an undivided one-fourth interest in the farm equipment, bank accounts and other personal property of the plantation. All of

these allegations were expressly admitted by the defendant (appellant).

Appellant maintains that those admissions, made by her prior counsel, were erroneous, and since the appellees were without any ownership in the property the chancery court was without jurisdiction to appoint a receiver.

Appellant cites us to *Golden Valley Land and Cattle Co.* v. *Johnstone*, 21 N.D. 101, 128 N.W. 691 (1910); *Kansas City* v. *Markham*, 339 Mo. 753, 99 S.W.2d 28, (1936); *Silberstein* v. *H.A. Circus Operating Corporation*, 129 S.W. 1085 (C.A. Mo. 1939), and *Fleet* v. *Hooker*, 63 P.2d 988 (S.Ct. Okla. 1937), holding that before a receiver will be appointed over property the applicant must show either that he has a clear or apparent right in or to the property. We would not quarrel with those holdings, but it must be said the issue in those cases was presented to the trial court and not for the first time on appeal. Appellant suggests that in *Fleet* v. *Hooker, supra*, the defendant admitted all the facts alleged by the petitioner seeking the appointment of a receiver, and even so, the court held the lower court lacked subject matter jurisdiction for the appointment of a receiver where the applicant failed to prove an interest in the property. The cases are distinguishable. In *Hooker*, while we gather the original defendants (not the parties appealing) may have acquiesced in the appointment of a receiver, that was not true of these petitioners who were appealing and who were not even parties to the original suit. The salient fact is the applicant for a receiver was simply a contract creditor for a money judgment upon unsecured notes, *who asserted no legal or equitable claim against any specific property*. Noting that the plaintiff's alleged grounds for the appointment of a receiver were "wholly insufficient," the court in *Hooker* held the appointment to be void.

Appellant cites us to a number of our own cases, notably *Hilburn* v. *First State Bank of Springdale*, 259 Ark. 569, 535 S.W.2d 810 (1976), holding that subject matter jurisdiction cannot be waived and may be raised for the first time on appeal. We will not deal with each case, the rule itself is well settled, but it applies where a court is wholly without jurisdiction under all the circumstances. *Smith* v. *Whitmore*, 273 Ark. 120, 617 S.W.2d 845 (1981); *Price* v. *Madison County Bank*, 90 Ark. 195, 118

S.W. 706 (1909). In *Titan Oil and Gas* v. *Shipley*, 257 Ark. 278, 517 S.W.2d 210 (1974), we said that where a court of equity was not "wholly incompetent" to grant the relief sought, objections to equity jurisdiction are waived when raised for the first time on appeal. The *Titan* court stressed the failure to object in the trial court as the "underlying basis" for its holding. See also *Crittenden County* v. *Williford*, 283 Ark. 289, 675 S.W.2d 631 (1984) and *Whitten Developments, Inc.* v. *Agee*, 256 Ark. 968, 511 S.W.2d 466 (1974).

The jurisdiction of courts of equity to appoint receivers needs no authority beyond that already discussed in this opinion.

## III

A final argument is that the appointment of a receiver was, in effect, the appointment of a conservator in violation of Arkansas law and the due process clause of the federal and state constitutions. Appellant submits that as the undisputed owner of an undivided three-fourths of the plantation she has a constitutional right not merely to own property, but also to manage it, that a state may not deprive an individual of this constitutional right unless she is incapable of managing it for herself. *Loss* v. *Loss*, 185 N.E.2d 228 (S.Ct. Ill. 1962); *Keenan* v. *Peevy*, 267 Ark. 218, 590 S.W.2d 259 (1979).

The argument was not, however, first offered to the trial court and may not, therefore, be made on appeal. Even arguments of constitutional dimensions must be argued below if they are to be preserved on appeal. *May* v. *Barg*, 276 Ark. 199, 633 S.W.2d 376 (1981); *Williams* v. *Edmondson*, 257 Ark. 837, 520 S.W.2d 260 (1974); *Arkansas Memorial Gardens, Inc.* v. *Simpson*, 238 Ark. 184, 381 S.W.2d 462 (1964).

For the reasons stated, we affirm the decree.

SMITH, GEORGE ROSE, J., not participating.