The Honorable Brent Haltom, Prosecuting Attorney Eighth Judicial District Miller County Courthouse, Room 6 Texarkana, Arkansas 75502
Dear Mr. Haltom:
This opinion is being issued in response to your recent questions regarding certain property of the Nevada County Hospital, which ceased operation on July 21, 1995, as a result of financial problems. You indicate that the hospital administrator's home and 1.353 acres of real property have been sold, but that the hospital's physical plant, other real property, and certain personal property located in the physical plant were not sold, because no bids were submitted. The Chancery Court of Nevada County has appointed a receiver "for collection of the cash and accounts receivable of the Board of Governors of the Nevada County Hospital."
With regard to this situation, you have presented the following questions:
 (1) Does the Nevada County Judge now have custody of the county hospital's physical plant, real estate and personal property, other than "cash and accounts receivable of the Board of Governors of the Nevada County Hospital?"
 (2) If so, are there any limitations concerning how the county, acting through the county judge, may itself use such properties?
 (3) If the response to Question 1 is affirmative, what limitations, if any, are there concerning the county leasing or renting such properties to governmental, quasi-governmental, and/or non-governmental entities?
 (4) If the response to Question 1 is affirmative, does the receivership in any way limit the actions of the county judge regarding properties other than the" cash and accounts receivable of the Board of Governors of the Nevada County Hospital?"
You have also asked:
 (5) May the county enter into an ambulance service contract with a business corporation for a period of more than one calendar year at a time?
RESPONSE
Question 1 — Does the Nevada County Judge now have custody of the countyhospital's physical plant, real estate and personal property, other than"cash and accounts receivable of the Board of Governors of the NevadaCounty Hospital?"
It is my opinion that the Nevada County Judge has custody of the county hospital's physical plant, real estate, and personal property, other than "cash and accounts receivable of the Board of Governors of the Nevada County Hospital."
Prior to proceeding with a discussion of the basis for my conclusion, I must note that my analysis of this matter would likely be different if the Nevada County Hospital were still operational. If that were the case, it would be necessary to consider the statutory provisions that set forth the powers and duties of county hospitals' boards of governors and the manner in which those powers and duties interact with those of the county judge. See A.C.A. § 14-263-101 et seq.[1] However, all powers and duties that are granted to county hospitals' boards of governors are granted for the purpose of empowering the boards to fulfill their primary charge of "managing, controlling, and supervising the operation of the county hospital." A.C.A. § 14-263-105(b) (Emphasis added). In light of the fact that the Nevada County Hospital is no longer in operation, it is my opinion that the board of governors no longer has a charge to fulfill, and that the board is therefore no longer empowered to carry out the statutory powers and duties. For this reason, the statutory provisions enumerating the board's powers and duties are inapplicable to the situation about which you have inquired. Rather, the pertinent powers and duties are those of the county judge.
Under the provisions of Amendment 55, § 3 of the Arkansas Constitution, the county judge is given "custody of county property." The provisions of A.C.A. § 14-14-1102, which implement Amendment 55 in part, elaborate on the extent of the County Judge's custody of county property. That statute states:
 (3) CUSTODY OF COUNTY PROPERTY. The county judge, as the chief executive officer of the county, shall have custody of county property and shall be responsible for the administration, care, and keeping of such county property, including the right to dispose of county property in the manner and procedure provided by law for the disposal of county property by the county court. The county judge shall have the right to assign or not assign use of such property whether or not the county property was purchased with county funds or was acquired through donations, gifts, grants, confiscation, or condemnation.
A.C.A. § 14-14-1102(3).
The judge's custody can, of course, be affected by a receivership. Rule 66 of the Arkansas Rules of Civil Procedure gives the chancery judge jurisdiction over receiverships and places the control of appointed receivers within the power of the judge. The appointing judge has the discretion and authority to determine the extent of the receivership,i.e., whether the receivership is to be general or limited. See
65 Am.Jur.2d § 152, citing Grant v. A.B. Leach Co., 280 U.S. 351 (1929). In the case about which you have inquired, the chancery judge chose to create a limited receivership. That is, the appointed receiver does not have control over all of the property of the Nevada County Hospital Board of Governors, but rather, only has control over the board's "cash and accounts receivable." See Docket No. E-96-79-3, Chancery Court of Nevada County, "Order Appointing Receiver," p. 3.
I therefore conclude that the receiver has no authority to dispose of or otherwise control any property other than the cash and accounts receivable of the Board of Governors of the Nevada County Hospital. My conclusion regarding this matter is bolstered by the rule of law that receivers cannot be appointed to handle property that is not in litigation. See 65 Am.Jur.2d § 154, citing Smith v. McCullough,104 U.S. 25 (1881), cited with approval in Chapin v. Stuckey, 286 Ark. 359,692 S.W.2d 609 (1985) (case decided on exception to cited rule of law). The only hospital property that has been subjected to litigation is that which would be available to pay the hospital's creditors — i.e., the cash and accounts receivable. The hospital's physical plant, other real property, and personal property located inside the physical plant have not been the subject of litigation, and therefore cannot be placed in receivership. (This property would, of course, be subject to any applicable security pledges in favor of creditors.)
For these reasons, I must conclude that the hospital's physical plant, other real property, and personal property located inside the physical plant retain the status that they held prior to the appointment of the receiver for the cash and accounts receivable. More specifically, these items of property (i.e., the hospital's physical plant, other real property, and personal property located inside the physical plant) remain within the constitutional and statutory custody and control of the county judge. Ark. Const., Am. 55, § 3; A.C.A. § 14-14-1102(3).
Question 2 — If so, are there any limitations concerning how the county,acting through the county judge, may itself use such properties?
As an initial matter, it must be noted that counties are empowered to take legislative action that is not prohibited by or contrary to state law. Arkansas Constitution, Amendment 55; A.C.A. § 14-14-801; A.C.A. §14-14-501. Counties are also generally authorized to "acquire, own, construct, reconstruct, extend, equip, impove, maintain, operate, sell, lease, contract concerning, or otherwise deal in or dispose of any land, building, improvements, or facilities of any and every nature whatever that can be used for hospitals, nursing homes, rest homes, or related facilities. . . ." A.C.A. § 14-265-103.
With regard to the use of county property generally, the law does set forth various limitations and parameters within which the county, acting through the county judge, must remain in using its property.
Two overriding provisions must be noted initially. First, the county has a general responsibility to "take such measures as shall be necessary to preserve all buildings and property of the county from waste or damage." A.C.A. § 14-19-107. Second, the county is prohibited by the illegal exaction clause of the Arkansas Constitution from using county property for a private purpose.[2] Arkansas Constitution, Article 16, § 13;Pogue v. Cooper, 284 Ark. 105, 679 S.W.2d 207 (1984); Op. Att'y Gen. No.95-038.
Within the guidelines of these two overriding principles, as well as counties' wide authority to use their property, the county must continue to comply with the provisions of A.C.A. § 14-16-105 through A.C.A. §14-16-110, regarding the sale and lease of county property. (For a discussion of the sale of county property, see Op. Att'y Gen. No.96-126. The lease of county property is discussed more fully in response to Question 3.) I realize that the county has already complied with some of the requirements of these statutes in following the bidding procedures. The other requirements of these provisions, such as the required price of property sold, remain in effect despite the fact that no bids were received for the property. In addition, the county is specifically authorized to use public property for the operation of a public recreational program. See A.C.A. § 14-16-201 et seq.
These sources of law provide the general parameters for the County's use of its property.
Question 3 — If the response to Question 1 is affirmative, whatlimitations, if any, are there concerning the county leasing or rentingsuch properties to governmental, quasi-governmental, and/ornon-governmental entities?
The county's lease of property is governed by A.C.A. §§ 14-16-108, -109, and -110.
Under these statutory provisions, the county is authorized, under certain conditions, to lease a county hospital to a municipality (A.C.A. §14-16-108),[3] to lease county lands to a municipality (A.C.A. §14-16-109), and, generally, to lease real or personal property belonging to the county to "any lawfully incorporated nonprofit, nonsectarian educational institution; any lawfully incorporated nonprofit, nonsectarian boys' club or girls' club; or any lawfully incorporated quasi-public, nonprofit, nonsectarian organizations including, but not limited to, community mental health centers," provided that the county court has been presented with a petition or other evidence establishing that the property is not and will not in the future be needed for use by the county (A.C.A. § 14-16-110). This statute also sets forth the procedure (including notice and a hearing) that must be followed in order to effectuate such a lease.
These are the limitations on leases of county property.
Question 4 — If the response to Question 1 is affirmative, does thereceivership in any way limit the actions of the county judge regardingproperties other than the "cash and accounts receivable of the Board ofGovernors of the Nevada County Hospital?"
For the reasons stated in response to Question 1, it is my opinion that the receivership, as currently constituted, does not, in and of itself, operate as a limitation upon the County's use of its hospital properties other than the property named in the Order Appointing Receiver (cash and accounts receivable). As stated in response to Question 1, the other hospital property would remain within the constitutional and statutory custody of the county judge. Ark. Const., Am. 55, § 3; A.C.A. §14-14-1102(3). As also noted previously, this property would, of course, be subject to any applicable security pledge in favor of creditors. In addition, if the chancery court, in its discretion, should choose to order an expanded receivership that would extend to the other hospital property, the county's use of the property would then be subject to the receivership.
Question 5 — May the county enter into an ambulance service contract witha business corporation for a period of more than one calendar year at atime?
It is my opinion that the county may enter into an ambulance service contract for a period of more than one calendar year at a time, provided that the contract is in compliance with the requirements of Article 12, § 4 of the Arkansas Constitution, but that the contract and the service provided pursuant to the contract must be reviewed annually.
Counties, acting through their quorum courts, are given the authority to enact ordinances to provide emergency medical services. See A.C.A. §20-13-301 et seq. and A.C.A. § 14-14-802. Once such an ordinance has been properly enacted,[4] the contract to provide such service, like any other county contract for commodities, will be subject to the county purchasing provisions of A.C.A. § 14-22-101 et seq. Those provisions (which set forth bidding requirements) do not place time limitations on county contracts.
The county should be cognizant, however, of the provisions of Article12, § 4 of the Arkansas Constitution, which require that the dollar amounts of contracts entered into by counties not exceed the revenue of the county from all sources for the year in which the contract is made. Nevada County's ambulance service contract must comply with this constitutional requirement.
In addition, the contract must be reviewed annually by the county intergovernmental cooperation councils that are created by A.C.A. §14-27-101 et seq. This set of statutes requires the council to conduct an annual review of all ambulance and emergency medical services that are being provided by any of the political subdivisions in the county, for the purpose of determining whether unnecessarily duplicative services exist, and whether the provision of such services can be shared among the political subdivisions. A.C.A. § 14-27-104.
It should also be noted that I have previously opined that counties may not grant exclusive franchises for emergency medical service; such franchises could be found to violate federal anti-trust laws. See Ops. Att'y Gen. Nos. 95-311; 87-474.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] A consideration of these provisions would be necessary even if the hospital were operating under a lease to a third party, because even in that situation, the hospital board of governors would retain its ultimate responsiblity for the operation of the hospital. See Ops. Att'y Gen. Nos. 94-264; 86-537.
[2] The question of whether a particular use of property constitutes a "private purpose" is a question of fact that must be determined on the basis of all of the relevant information. Op. Att'y Gen. No. 95-038.
[3] Among the conditions for such a lease is the provision that the municipality continue to operate the property either as a hospital or as a nursing home.
[4] The provisions of A.C.A. § 20-13-301 et seq. set forth the proper procedure (including notice and a public hearing) for enacting an ordinance to provide emergency medical service.